Jaqui v. Johnson.

JAQUI, appellant, and JOHNSON, respondent.

1. Words in a deed granting water from a pond and the easement of an aqueduct in grantor's land, construed.

2. Such easement, when described in the grant, will be limited to the defined locality. The owner of the dominant tenement cannot change it for convenience or necessity.

3. A substantial change in place or manner of enjoyment, will be restrained by injunction.

Appeal from a decree made in accordance with the opinion of the Vice-Chancellor, reported in 10 C. E. Green 410.

Mr. Vanatta, Attorney-General, for appellant.

Mr. Pitney, for respondent.

The opinion of the court was delivered by
KNAPP, J.

The decree of the Chancellor made in this cause, and brought here for review by this appeal, is for an injunction against the appellant. The cause was heard by the Vice-Chancellor upon bill, answer and proofs, and he advised a decree restraining and perpetually enjoining the appellant from excavating and placing in the manner proposed by him, upon the lands of the appellee, an aqueduct, the purpose of which was to carry water from the mill-pond of the appellee, and across his lands, to the mill of the appellant. The parties own parcels of land situate in Morris county, and adjoining

each other. On each parcel is a mill and pond of water. The waters from the pond on the appellee's land formerly ran an old saw-mill, standing on the same lands, which was replaced by a cider-mill. On the lands of the appellant is a grist-mill, with its pond and appurtenances. The appellant derives title to his lands through a deed of conveyance dated January 18th, 1864, from Charles Johnson, the father of the appellant, who then owned both tracts, to appellant and another, whose title appellant afterwards obtained. The appellee has title to his lands through the will of his father.

Before the making of the above-mentioned deed, Charles Johnson had connected with the flume of the saw-mill pond, at a point elevated about five feet above the surface of the grist-mill pond, a wooden leader, seven by ten inches, exterior measurement, and carried the same by a circuitous line over the intervening lands to the grist-mill pond, and through this leader the surplus water from the upper pond was passed to and discharged into the lower, at a point about three feet above its surface.

This arrangement was existing at the time the above deed was made by Charles Johnson, conveying the grist-mill lot and appurtenances. The deed, amongst other things, conveyed the right to raise the dam of the appellant's pond three feet, and to flow such of the grantor's lands as would be flooded thereby. It contained also the following clause:

Also to have the water from the old saw-mill pond of said Charles Johnson, in rear of his dwelling, as now carried in the trunk or feeder that carries the water from said pond to the grist-mill pond above the dam, excepting only so much of said water as said Charles Johnson, his heirs or assigns, shall want for grinding apples at his cider-mill, near the old saw-mill, and to have the privilege at all times to enter upon all or any of the lands of said Charles Johnson, along and joining said trunk or feeder, to alter, repair or renew the same at their convenience, also to keep up the old saw-mill dam at its present height, and to take any gravel, stones or earth from the premises of said Charles Johnson, joining said pond, that

may, in their judgment, be needed to keep the same in good repair, or, if need be, to renew or rebuild the same. All or any repairs, or re-building said dam, to be at the proper costs and charges of said party of the second part, their heirs and assigns forever; and in no way to restrict the use of the water for the purpose of the said cider-mill and grinding apples by the said Charles Johnson, his heirs or assigns, as aforesaid.

For several years after the conveyance to Jaqui and Johnson, the water from the saw-mill pond flowed through the old feeder to the grist-mill pond, and continued its flow until the structure became useless by decay.

The appellant, to renew his enjoyment of the water grant, undertook to tap the saw-mill pond with a cylindrical tube about two feet in diameter, extending it thence across the appellee's lands, on a line different from that occupied by the old leader, to the mill of the appellee, a point many feet lower than the surface of the grist-mill pond. This tube or flume he proposed to bed in the appellee's land on the line selected for it, and commenced excavations on those lands for that purpose; from doing this the decree of the Chancellor enjoins him.

The purpose of the appellant is to substitute for the old pipe one of much greater capacity; to carry it from the saw-mill pond with greatly increased descent, and issuing at a much lower point than the grist-mill pond, by both of which means the water-flow will be greatly increased; to place the new pipe on a line materially variant from the course of the old, thereby occupying other lands of the appellee, and to place the new one beneath the surface, the old one having been mainly above ground. The appellant rests his right to make these alterations on what he insists is the true meaning, force and effect of the grant to him by the elder Johnson. The appellee, on the contrary, claims that each and every of the attempted changes impose burdens upon and injuries to his property, such as are not only unwarranted by the deed which is invoked to justify them, but are in conflict with the

express terms of that grant. Of this opinion was the Vice-Chancellor. The construction to be given to the clause quoted from the deed, must determine the correctness of the conclusions reached by the Vice-Chancellor, and the propriety of the decree for perpetual injunction against the appellant.

By the clause in question, two distinct rights are granted. The first is to have water from the pond lying in the rear of the grantor's house. Is he to have all the water, except that for the cider-mill, or a part only ? The language of the deed is, that he is " to have *the water from* the old saw-mill pond, *as now carried in the trunk or feeder* that carries the water," &c. The trunk or feeder was then in use, performing the service of carrying water from one pond to the other ; its size, carrying capacity, grade, points of connection, and discharge, each affecting the quantity of flowage, were fixed, open to the observation of the parties, and with that existing as a practical method of determining the question of quantity, they, in giving expression to their intentions in that regard, chose that as the measure of the water grant. It was not all the water of the pond that was granted, but such of the water *from* the pond as could flow through that or an equivalent conduit, connected with the pond in the manner of its then connection, and carried in the same general grade, subject to no right to make substantial change in either which could render the right less advantageous to the grantee, or more injurious or burdensome to the grantor. This, as it clearly appears to me, is the extent of the water grant, unrestricted by the exception in the deed of " so much of said water as said Charles Johnson, or his heirs, &c., shall want for grinding apples at his cider-mill." Subject to this exception, out of the water granted the appellant may have, at all times, the water which will flow from the upper pond, through a pipe or other water-way of equal capacity and flowage with the old trunk, entering the saw-mill pond at the same level. Such water as will thus flow to him, he may have and use without question as to the manner of disposing of it on his own premises. But because the appellant was about to draw from the pond with the larger pipe,

and with much greater descent, the Vice-Chancellor rightly decided it to be clearly in excess of his grant, and the decree for injunction in respect to that, was right. *Angell on Watercourses*, § 149, and cases cited.

The second right conveyed by the said clause in Johnson's deed to the appellant, is that of an easement in the lands remaining in Charles Johnson, and now owned by the appellee, for an aqueduct to convey the water which the deed entitled him to take from the old mill-pond, through and over those lands, to the mill-pond conveyed to the appellant. The controversy as to this, respects the location of this servitude, and the manner of resting or fixing it upon the servient tenement. The appellant purposes a material change in the location of the new pipe, from the route occupied by the old one, and to bed the whole length over appellant's lands below the surface of the ground, claiming and insisting that by the fair construction of the deed he is permitted to do both ; that the right given him " to alter, repair or renew " the old feeder, subjected the whole of the lands retained by the grantor to this easement, and made every part of it, whether retained by him or granted away to others, liable to have, at the mere will of the appellant, the burden of its occupancy imposed upon it, and that he may carry it above or sink it below the ground surface, and change from one to the other, as may seem to him best suited to his convenience ; in effect, that his power over the lands in disposing of this water trunk is not more restricted in its exercise than it would be were he owner of the fee. A grant so large, so burdensome, and so unnecessary, should be supported by clear and unequivocal language.

In *Jennison* v. *Walker*, 11 *Gray* 423, there was a general and unlimited grant of an easement in plaintiff's lands, much like this. Under it, the parties had located the aqueduct on the servient estate, and it had remained there until its decay. The defendant sought to justify a trespass on other parts of the same close, committed in laying down a new aqueduct for the same service, but in a changed direction. Such change, it was alleged, was not more injurious to the owner than the

other, and was necessitated by the occupancy of the old route by a newly-constructed railroad. The court sustained a verdict for plaintiff, and held that where an easement is granted in general terms, without definite location, the grantee does not thereby acquire the right to use the servient estate without limitation as to plan or mode of enjoying the easement: when the right granted has once been fixed and exercised in a defined course, with the acquiescence of the parties, it cannot be changed at the pleasure of the grantee.

The decision rests upon principle and authority. If the easement should be regarded as in the class known as continuous, passing to the grantee of the dominant tenement by implication, as in *Watts* v. *Kelson*, 6 *Ch. Ap. Cas.* 169, it would still be limited to its visible location.

In this case the easement was located and described in fact, and by the terms of the deed. It needed no act to illustrate and interpret the meaning and intent of the parties to the deed: grantee was to have the water as then carried in the trunk or feeder from one pond to the other; the lands of the appellee, which he might enter on to " repair or renew," were those along and joining said trunk or feeder; the parties had the old structure before them; the grantor had used it, as it appeared to their observation; and the words used in the deed were appropriate to grant the easement as it existed, and to localize and define it; and the grantee is confined, in his enjoyment of it, substantially to that locality, unless other words are found in the deed, authorizing a change of place. Upon the argument, is was earnestly urged that the word " alter," used in connection with the right to repair and renew, confers authority to remove the casement to such other part of complainant's lands as the appellant shall desire. The language of the deed is that the grantees " have the privilege, at all times, to enter upon all or any of the lands of said Charles Johnson, along and joining said trunk or feeder, to. *alter*, repair, or renew the same at their convenience." The words alter, repair, or renew stand in conjunction, and clearly relate to the trunk or feeder; to the aqueduct as a structure,

not to the easement in the land. The feeder was of board, and liable to rot and become leaky. The grantee could enter on the lands along and joining it, and repair it. It might be destroyed by decay or other forces. He was permitted to renew it, or he might alter it in its construction, shape, and in the material of which it was composed ; or, to give to the word the largest meaning, he might substitute another and different appliance for transmitting the water ; but the power to alter the pipe, or to substitute one for another, is very different, and distinguishable from that of changing its place on the land. Without altering the feeder, it might be removed to another place. It might be totally altered, and remain where it is placed by the grant. The appellant proposes to alter the feeder, and this he may do, limited only by its flowage capacity ; but he asserts the right as well to change its location on the lands. I think there is neither expression in, nor implication to be drawn from the deed, to warrant it, and, therefore, he was rightly enjoined from doing this. It seems to me to be quite clear, also, that the right is wanting in the appellant, against the objection of the appellee, to bed the water pipes beneath the surface of the ground, where, before, they were above, or to make any substantial change in the relation of the pipe to the surface of the appellee's lands, from the manner of its use and position at the time of conveyance. It is no proper answer to his objection, in such case, to say that it will injure him no more or less than the others, or benefit him. One may not invade the property of another, and justify or excuse the legal wrong because attended with no actual injury to such property, and especially so when the question of whether injurious or not rests only on the opinion of the trespasser.

It is the exclusive right of the owner of the servient tenement, suffering the burdens of an easement localized and defined, to say whether or not the dominant owner shall be permitted to change the character or plan of the servitude. It is doubtless true that the plan of the appellant to carry the aqueduct to the lower mill, shortens the route over the lands

of the appellee, but it involves a substantial departure from the line established by the deed, and as heretofore enjoyed, whereby lands of the appellee, never subjected to the privilege, are made to bear it. The decree in this case, and the writ of injunction issued under it, was to restrain the appellant from this departure, and from the unauthorized use of other lands of the appellee. Its effect is to confine the waterway, in its entire length over the servient tenement until it comes to the appellant's possession, to the course fixed and established by the parties to the deed.

In what manner the appellant may dispose of the water which he may rightfully draw from the pond, and to what uses he may devote it when it has come to his own lands and possession, are questions, although somewhat discussed on the argument, not presented by the case. Their solution, if the questions were before us, must depend upon the application of rules declared in the courts of England, in *Luttrel's case, Coke's R., part* 4, *p.* 84, and which, from that time to the present, in a multitude of cases, both in England and this country, have been uniformly accepted and applied.

No objection was made, on the argument, to the form of the decree. In effect, it restrains and enjoins the appellant from excavating the lands of the appellee in the line proposed, and placing there the proposed new trunk or conduit, or any other trunk or conduit, for the purpose of transmitting the water from the saw-mill pond directly to the grist-mill, over a line other than that occupied by the old feeder.

Such decree was rightfully made, and should be affirmed, with costs.

Decree unanimously affirmed.