[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 602 
This suit in ejectment was instituted in the former New Jersey Supreme Court, Morris County, and transferred on September 15th, 1948 to this court. The parties waived trial by jury and submitted the matter on a stipulation of facts and briefs to the court on October 15th, 1948 for decision.
The facts giving rise to the dispute are, and I find them to be as follows:
The plaintiffs are presently the owners of partially developed lands situate in the Township of Mendham, Morris County, New Jersey, comprising approximately three and one-half acres and more particularly described in the complaint. The premises in question were formerly owned by A. Siegfried Lau.
On June 18th, 1923 Lau, then the owner of the premises made, executed, sealed and delivered the following instrument:
"$100.00 Received of the American Telephone and Telegraph Company of New Jersey One Hundred 0/100 Dollars, in consideration of which I hereby grant unto said Company, its successors and assigns, the right, privilege and authority to construct, operate and maintain its lines of Telephone and Telegraph, including the necessary poles, wires, cables and fixtures upon, over and across the property which I own, or in which I have any interest, in the Township of Mendham, County of Morris and State of New Jersey, and upon and along the roads, streets, or highways adjoining the said property, with the right to permit the attachment of the wires and cables of any *Page 603 
other company, and the right to trim any trees along said lines so as to keep the wires and cables cleared at least eighteen inches, to erect and set the necessary guy and brace poles and anchors and to attach thereto and to trees the necessary guy wires; said sum being received in full payment therefor, pole west of old Calais road to be located on property line. Trees interfering with said line to be cut down.
Witness my hand and seal, this 18 day of June, A.D. 1923, at 35 Ramge Terrace, Bloomfield, N.J.
(Post Office Address)
Witness: D.L. Ladrigan
 A. Siegfried Lau (L.S.) 
(Land Owner)
Approved: F.R. Elsasser, Attorney F.L.B."
The above instrument was not recorded in the County Clerk's Office of Morris County, New Jersey.
Thereafter the defendant entered upon the premises in question and erected thereon four telegraph or telephone poles bearing wires, cables and fixtures with the required and necessary guy wires and anchors. The poles range in height from twenty-five to thirty feet and are spaced at intervals of 107 feet, 111 feet, 111 feet and 102 feet respectively in a general east-west direction, and since October 1923 have been and still are being used by the defendant to maintain three long distance telephone and telegraph cables. The defendant has kept the surface area for a distance of approximately fifteen feet in width on each side of the pole line as it traversed the property clear of underbrush, saplings and plant growth. From October 1923 to and including the present time, this pole line bearing the wires, cables and fixtures and with the required and necessary guy and brace poles and anchors has remained in the same location as when installed on the premises.
On May 19th, 1925 A. Siegfried Lau and Ernestine Lau, his wife, conveyed the aforementioned premises to one Leonora B. Natkins, which deed of conveyance was recorded in the Clerk's Office of the County of Morris on the same day in Book M-29 of Deeds on page 432, etc. On August 27th, 1932 Leonora B. Natkins, widow, conveyed the premises in question, still undeveloped, to George A. McLaren, Jr. and Alfred H. *Page 604 
Tucker, which deed of conveyance was recorded on August 29th, 1932 in the Clerk's Office of the County of Morris in Book C-33 of Deeds on page 532, etc. On May 10th, 1938 George A. McLaren, Jr., unmarried, conveyed to George A. McLaren, Sr., his undivided one-half interest in the premises in question. None of the deeds in the chain of title from A. Siegfried Lau to the present owners of the premises contains any statement or recital that the conveyance was made subject to the instrument made and executed by A. Siegfried Lau on the 18th day of June 1923 set forth in full, supra. In the month of September 1932 a small summer dwelling was erected on the premises by the then owners thereof. The present plaintiffs are now the sole owners of the premises in question.
At no time prior to April 8th, 1947 did the aforementioned owners of the property, including the plaintiffs, object to the construction, operation and maintenance of the pole lines. In 1940 the plaintiffs requested the defendant to remove brush that was on the said defendant's so called right of way. At the request of the plaintiffs, defendant in May 1947 removed six partially dead trees which were within twenty to twenty-five feet of the defendant's pole line and constituted a hazard to it. On April 8th, 1947 and again on June 25th, 1947 plaintiffs directed communications to defendant requesting the removal of the pole line, wires, cables, fixtures, etc. The defendant refused so to do. Hence the present suit which seeks, by ejectment, possession of the disputed strip of land.
The first question which presents itself is: what is the legal effect of the instrument made and executed by A. Siegfried Lau to the defendant on June 18th, 1923? Is it a grant running with the land and constituting an easement so-called or other irrevocable interest in the land; or is it a revocable license, personal between A. Siegfried Lau, the licensor, and the defendant, and as such does not run with the land?
The owner of land may impose any legal burden upon it he may choose to create. He may do so by a direct conveyance of some right or privilege over his property for the benefit of some designated grantee. The intent to encumber the land with the burden must be clear. Turning, then, to the *Page 605 
instrument in question, we have the phrase "in consideration of which I hereby grant unto said company, its successors and assigns, the right * * *." The word "grant" connotes a conveyance; an intention to pass something; an extinguishment of the right of the grantor and implies a contract not to re-assert that right. The phrase "unto said company, its successors and assigns," indicates an intent to make the given right, privilege and authority permanent. The right or privilege, having been brought into existence by a deed, is presumed to be permanent, unless a contrary intention is expressed. If it were intended to make the grant continue for a limited term, that fact should have been expressed. The instrument in question contains all of the elements of a grant of a servitude on the land in favor of the defendant. Such was obviously the intention of the parties as expressed in the instrument in the light of the surrounding circumstances. The defendant company desired to extend its telephone and telegraph communication system. To do so, with convenience, it became necessary to cross the lands of Lau and he granted that right and privilege in consideration of the payment of $100. It was the intention of the parties that the pole lines were to remain indefinitely and that a servitude be created on the land for the benefit of the defendant for that purpose.
I therefore find that the writing of June 18th, 1923 is a grant running with the land and constitutes an irrevocable servitude on the land. It is more than a mere license to do some act upon the land which may be revoked at the will of the licensor.
It is argued that the instrument is indefinite as to the location and therefore the right is too uncertain to be enforced. The answer is that the parties have defined the right and privilege by practical location. If the location and limits of the servitude are not defined in the grant, a reasonably convenient and suitable way is presumed to be intended. Here the defendant exercised the right in a particular line with the acquiescence of the owner of the servient tenement. The location and extent of the servitude was determined by practical location and use by the defendant, acquiesced in by the grantor and his successors *Page 606 
in title, for a long period of time. The location and extent of the right and privilege is as fixed as if it had been described in the grant by meets and bounds.
The next question which presents itself is: what is the effect of the failure to record the instrument of June 18th, 1923 in the Clerk's Office of the County of Morris?
As an instrument affecting the title to real estate or any interest therein or granting any right or interest therein,R.S. 46:16-1 2, it was void and of no effect against subsequent bona fide purchasers not having notice thereof until duly recorded or lodged for record in the office of the county recording officer in which the affected real estate is situate,R.S. 46:22-1. The key words are "not having notice thereof." Possession or occupation of land, to be effectual as notice must be exclusive and uninterrupted, open, notorious and visible,i.e., it must indicate the occupant; it must indicate that someone other than he who appears by the record to be the owner has rights in the premises. Cox v. Devinney, 65 N.J.L. 389,47 Atl. Rep. 569. Whatever is sufficient to put a party on inquiry is good notice. The rule is the same at law as in equity and the ground upon which the title acquired by a prior registry of a deed is lost in the case of notice to the second grantee of the existence of the prior conveyance is that it is a fraud in the second grantee to take a deed knowing or having reason to suspect the existence of a prior title. Holmes v. Stout,10 N.J. Eq. 419. The plaintiffs had constructive notice of the prior rights of the defendant. Since October 1923 when the poles were erected, the defendant's occupation of the strip of land upon which the poles were erected was exclusive and uninterrupted, open, notorious and visible. The presence of the poles, the wires, cables, guys and anchors as a part of a communication system indicated that someone other than he who appeared by the record to be the owner had rights in the premises. The visible presence of the poles and wires was sufficient to put the plaintiffs upon inquiry to determine whether the defendant or some other similar company had the right to erect and maintain the telephone lines. The occupation of the strip of land by the defendant was as exclusive as the circumstances *Page 607 
of the case would permit. The plaintiffs took title to the premises in question with notice of the defendant's rights and subject thereto. The failure of the defendant to record the instrument does not affect its rights in the circumstances.
Therefore I find a verdict in favor of the defendant American Telephone and Telegraph Company, a corporation of New Jersey, and against the plaintiffs George A. McLaren, Sr., and Alfred H. Tucker, no cause of action.