GRACE RUSSELL, GENERAL ADMINISTRATRIX AND AD-
MINISTRATRIX AD PROSEQUENDUM OF THE ESTATE
OF MAGGIE KEITH, DECEASED, ALSO KNOWN AS LELA
MAGGIE KEITH, DECEASED, PLAINTIFF-APPELLANT,
v. EAST COAST SHIPYARDS, INC., A BODY CORPORATE,
DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 22, 1950—Decided June 28, 1950.

(1)

Before Judges McGeehan, Colie and Eastwood.

*Mr. Edward J. Madden* argued the cause for appellant (*Mr. Louis E. Saunders,* attorney).

*Mr. George P. Moser* argued the cause for respondent (*Mr. Nicholas S. Schloeder,* on the brief).

The opinion of the court was delivered by
McGeehan, S. J. A. D. At the close of the plaintiff's case in the Superior Court, Law Division, the court granted de-

fendant's motion to dismiss the plaintiff's action. The plaintiff appeals from the judgment entered thereon.

In 1944 the defendant, East Coast Shipyards, Inc.. had a shipbuilding plant in Bayonne, New Jersey. Vos, Inc., operated a cafeteria and restaurant on the premises which catered to the officers and employees of the defendant. Vos, Inc., purchased coffee-making equipment consisting of two 100-gallon water boilers, two 10-gallon coffee urns, and a long table; it was delivered to the premises and on December 13, 1944, was installed in the kitchen of the cafeteria by two men who were regularly employed by the defendant in its maintenance department. Maggie Keith, the deceased, was an employee of Vos, Inc. While working in the kitchen of the cafeteria on December 14, 1944, she was scalded by boiling water and steam from one of the two new water boilers when it exploded. As a result of the scalding, she died on December 16, 1944. The complaint charged that the defendant's agents, servants or employees "so negligently repaired and installed" the water boiler that when it was subsequently operated, it exploded.

The water boilers were cylinders, each containing a steam coil and each having two safety valves set to blow off at one and a half pounds pressure. On each boiler was an inlet to permit the steam to enter the coils and a return, another inlet for the water, an outlet from the boiler to the coffee urn for the hot water or steam, and two openings for the safety valves.

From the plaintiff's proofs it appeared that the water boiler which exploded had been tested by the manufacturer before delivery and had again been tested by Max Wiedow, the president of Vos, Inc., after the installation was completed on December 13, 1944. Both tests were made to insure, among other things, that the safety valves would properly blow off. In both tests the tanks were found in good working order and the safety valves blew off at one and a half pounds, although in the second test it took a longer time than expected to get sufficient steam in the steam coil.

The coffee urns and boilers were put in operation on the morning of December 14th, and at about 10 A. M. one of the boilers exploded while Maggie Keith was working nearby. The boiler exploded before the safety valves blew off. In the explosion the top of the boiler, which had been soldered on, was partially blown off and water and steam escaped. An inspection after the explosion disclosed that the steam coil was intact and that in the tube of the safety valve there was "some kind of a composition," "a brown, gummy substance," "a sticky compound, something like white lead," and that this brown compound and lampwick "seemed to be stuck and frozen right in these valves." Lampwick is a white substance something like wool which is used on pipes for tightening purposes. "The entire tube was blocked with that stuff." The inlet from the tank to the safety valve had a three-quarter inch thread. The substance in the valve was a hard substance and some forms of it could be seen around the top of the boiler.

There was testimony by a pipe fitter, an employee of the defendant at the time, that he saw the defendant's employees installing the water boiler and that they were making the pipe connections to the water inlet of the boiler at the time. They were using regular pipe fitters' tools and equipment which included different kinds of compounds. The compounds are used to seal the joints of pipes and the compound they were using was a brownish compound. While he was watching them, one of the men "took a fitting and dumped it, held it, and put it in the compound, and turned it around and swished it around in his finger." The witness described this fitting as a three-inch nipple and testified that when the workman took the fitting out of the compound, loose excess of the compound was in the nipple and the loose excess of compound dropped down into the water pipe when the fitting was inserted in the water line. Another witness for the plaintiff testified that the defendant's employees, in installing the water boiler, used nipples, pipe compound and lampwick. An expert for the plaintiff testified that in his opinion the com-

pound which got into the water line was forced by the boiling water and steam bubbles into the connections of the safety valves and clogged the safety valves so that they wouldn't function. Further, that if the safety valves had functioned properly, they would have let the steam out and reduced the pressure in the boiler so that it wouldn't blow up. The expert testified that it would take about one-tenth of a pound of compound to block the safety valve.

The theory of the plaintiff's case was that the employees of the defendant, in installing the boiler, allowed pipe compound and lampwick to get into the water line supplying the boiler and that when the water became heated, the compound and lampwick, or the compound alone, was forced into the inlets of the safety valves and blocked them. Because the safety valves were blocked, the pressure of the steam in the boiler increased until it caused the boiler to explode.

The court granted defendant's motion for dismissal "on the ground that there is a failure in the affirmative proofs to show that there was present in the pipe leading to the valve the quantity of compound which the expert who testified on behalf of the plaintiff said it was necessary to have in that pipe before the condition which he said caused the explosion could occur."

On a motion for dismissal, made at the end of the plaintiff's case, all of the evidence adduced by the plaintiff, and every legitimate inference drawn therefrom, must be considered in the light most favorable to the plaintiff's claim, and if such evidence or inference of fact will support a verdict for plaintiff, such motion should be denied. *Schumann v. Horn & Hardart Baking Co.*, 8 *N. J. Super.* 153 (*App. Div.* 1950); *Strulko v. Mann*, 124 *N. J. L.* 183 (*E. & A.* 1940).

We think that the jury could have found from the evidence and the legitimate inferences to be drawn therefrom that sufficient compound was injected into the water system by the defendant's employees, while making the installation, to block the safety valves, even though it took one-tenth of

a pound of compound to block a safety valve. We conclude that the court erred in granting the dismissal on this ground.

On the motion below, the defendant advanced two other grounds for dismissal: (1) that the workers who installed the boiler producing the injury were *pro hac vice* the employees of Vos, Inc., the purchaser of the boiler, for whose use and benefit it was being installed, and (2) that the deceased was guilty of contributory negligence and she assumed the risks incident to the situation which produced the injuries which caused her death. The defendant argues that even though the judgment cannot be affirmed on the ground relied upon by the court below, it should be affirmed as correct on either of the two further grounds advanced by defendant below.

██ When a servant is permitted or directed by the master to perform services for another, he may become the servant of such other. The question of whether the general employer, or the specific employer, is the master turns upon the decision as to who has the right to exercise control over the servant. *Younkers v. Ocean County*, 130 *N. J. L.* 607 (*E. & A.* 1943). In this case there was little, if any, evidence as to control or the right to exercise control. There was evidence that the employees of the defendant who made the installation were sent by the defendant to do so when informed that Vos, Inc., were unable to get anybody to hook it up; that the installation required a connection between the steam pipe of the defendant and the boiler; that the defendant's employees made the installation during their regular work time; and that the defendant paid them for the time spent in making the installation. We think that a jury question was presented as to whether the defendant's employees were under the defendant's control while engaged in making the installation. *Younkers v. Ocean County*, above; *Restatement, Agency*, § 226.

The defendant's argument that the deceased was guilty of contributory negligence or assumption of risk is wholly lacking in merit.

The judgment is reversed.