10 N.J. Super. 1 (1950)
76 A.2d 76
ALBERTIS INGLING, PLAINTIFF-RESPONDENT,
v.
PUBLIC SERVICE ELECTRIC AND GAS COMPANY, A CORPORATION, AND NEW JERSEY BELL TELEPHONE COMPANY, A CORPORATION, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 9, 1950.
Decided October 25, 1950.
*3 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
*4 Mr. Herman H. Wille, Jr., argued the cause for appellant, Public Service Electric and Gas Company (Mr. Carl T. Freggens, attorney).
Mr. Sidney P. McCord, Jr., argued the cause for appellant, New Jersey Bell Telephone Company (Messrs. Starr, Summerill & Davis, attorneys).
Mr. William C. Gotshalk argued the cause for respondent (Mr. Raymond Saltzman, attorney).
The opinion of the court was delivered by WM. J. BRENNAN, J.A.D.
Plaintiff was injured in the side yard of his Brooklawn, Camden County, home when preparing on a July day in 1946 to water his lawn and his right heel struck a metal shield, called a Bierce protector, on a guy wire anchored on his lot within a foot from the side of his house.
His back was to the house as he stood on a concrete walk running along its side; he stooped over to pick up a garden hose and his foot raised backward toward the house away from the walk and came into contact "with the edge of that shield over the guy wire."
The shield ran up the guy wire a distance of 7 feet from its anchor point. It resembled and was about the width of a half section of rain pipe, with its rounded surface toward the concrete walk and its two edges facing the house. The guy wire was one of two such wires supporting a pole which bore equipment of both defendants and was located within plaintiff's fence but just off the rear of his lot; the fence encroached on an alleyway, not part of plaintiff's property. The guy wire and Bierce cover were installed around 1930 by The Delaware and Atlantic Telegraph and Telephone Company, predecessor of defendant Telephone Company. The other guy wire was installed in 1919 by Public Service Electric Company, predecessor of defendant Electric and Gas Company; it paralleled the Telephone Company guy wire and was fastened near the ground in the side foundation of *5 plaintiff's house within a foot of the anchor point of the Telephone Company guy wire.
Plaintiff sued both defendants in the Superior Court, Law Division, Camden County, alleging their joint and several liability for his injury, contending that the installation was a trespass, that the guy wires and Bierce protector had been negligently located, and that the guy wires and protector had been negligently maintained. At the close of plaintiff's case, the suit was dismissed on defendants' motions as to the allegations of trespass and negligent maintenance, but motions for dismissal and for judgment at the close of the case were denied as to the allegations of negligent location and there was submitted to the jury "the question of whether or not the defendant companies or either of them, in the exercise of its right to go upon the plaintiff's land, so constructed its equipment that a reasonably prudent person would have foreseen an injury resulting to the land owner in the legitimate and reasonable use of the property and its appurtenances." Plaintiff had a jury verdict against both defendants and they appeal from the judgment entered thereon; plaintiff cross appeals that if the judgment is reversed his complaint as to trespass and negligent maintenance was improperly dismissed.
Plaintiff's home was one of 488 houses built as part of a housing project developed after the first World War by Noreg Realty Company. That company contracted with Public Service Electric Company by agreement dated February 19, 1919, for the servicing of the houses with electric power, and agreed to "afford full entry to Electric upon the portions of land designed for streets and alleys in said development for the erection of poles, and afford Electric full opportunity and privilege to erect and maintain the same and electric service thereon;" Electric, on its part, agreed to "erect all poles and run all wires, * * *" required to do the work and "at its own cost and expense, to maintain, keep in repair, replace and restore any and all poles, wires * * * installed under this agreement." The agreement was not recorded, but when *6 Noreg Realty Company conveyed the entire tract to the United States of America, the deed, recorded July 10, 1923, included a provision "together with the benefits granted and subject to the terms, covenants and conditions imposed by the following agreements, viz., * * * (c) Agreement made the 19th day of February, 1919, between said Noreg Realty Company and Public Service Electric Company * * *."
The pole was erected by Public Service Electric Company April 29, 1919, and a guy wire was placed thereon by that company and fastened to the house at that time.
Noreg Realty Company made an agreement dated July 20, 1920, with Delaware and Atlantic Telegraph and Telephone Company to obtain telephone service for the houses. This agreement was recorded and provided for the use by the Telephone Company of the poles previously erected by the Electric Company and granted the Telephone Company rights "to construct additional guys and anchors for the support of some of the said poles," as shown on a plan attached to and recorded with the agreement; arrow-shaped symbols on the plan showed the location of the several poles on the tract upon which the Telephone Company was to place its equipment, the pole here being one such, and as to which, and to two other poles, there was also a legend "Tel. Co. anchor guys to be located in front of and in line with present Elec Co. guys." Plaintiff argues that the symbol identified with the legend points to the house next door and not to his house. The fact is there was no guy wire of Public Service Electric Company from the pole here involved to the house next door; the only guy wire on the pole was that fastened in 1919 to plaintiff's house. In these circumstances the symbol and legend are plainly to be construed as referring to the guy wire on plaintiff's house. See Man v. Vockroth, 94 N.J. Eq. 511 (E. & A. 1923). The location in which the Telephone Company's guy wire was to be anchored in plaintiff's lot was thus fixed by the agreement; it is conceded the wire was located in or before the year 1930 at the spot where it was when plaintiff was injured.
*7 The United States of America conveyed the tract to Brooklawn Housing Corporation and plaintiff derived his title from the latter by deed recorded July 2, 1937.
In 1940, three years after plaintiff took possession, his wife requested defendant Electric and Gas Company "to remove the guy wires from the house because they were in a dangerous place where they were, where the children were concerned in playing." She refused to sign a paper which she admitted "had something to do with a pole;" she said this was "because they were going to move the pole from one corner of the yard to the other but had no reference to removing the guy wires from the foundation of the home." A company witness identified the paper as "a pole consent form for her signature, which would allow a change of the location of the pole and the guy wire," and said no change was made because the pole consent was not signed.
Defendants urge that they were entitled to judgment at the end of the case because the anchoring of the guy wires where they were and had been for 27 and 16 years respectively at the time the plaintiff was injured was as of right under easements granted them by Noreg Realty Company, plaintiff's predecessor in title, that the plaintiff's lot was the servient tenement and the selection of the places where the guy wires rested was consented to and acquiesced in by Noreg Realty Company when the installations were made, that the same were fixed, open and visible to plaintiff when he purchased the property in 1937, and remained so during the nine years thereafter up to the time of the accident; thus, that plaintiff as owner of the servient tenement was concluded by the selection or fixing of locations consented to and acquiesced in by his predecessor in title, and by his own acquiescence in the locations, and had and has no standing to maintain an action against defendants founded on alleged negligent choice of the locations.
We think it was error to deny defendants' motions for judgment. The agreements of 1919 and 1920 between Noreg Realty Company and the respective predecessors of *8 defendants granted easements; the words used in both instruments were appropriate to such purpose. Jaqui v. Johnson, 27 N.J. Eq. 526 (E. & A. 1875); McLaren v. American Telephone & Telegraph Co., 1 N.J. Super. 600 (Law Div. 1948). The real controversy is as to the manner of resting or fixing the easements upon the servient tenement. The choice of the house as the fastening point for the guy wire placed by Public Service Electric Company in 1919 is not explained in the proofs; however, the location was clearly approved and acquiesced in by Noreg Realty Company in its later 1920 agreement with the Delaware and Atlantic Telegraph and Telephone Company, in which that location was adopted as the guide post fixing the location of the Telephone Company's guy wire; this was done by the legend requiring the added guy wire "to be located in front of and in line with present Elec. Co. guys;" with the Electric and Gas Company guy wire fixed and open to their observation, and therefore existing as a practical measure of determining the location for the Telephone Company guy wire, the parties expressed their intention by the legend on the plan and chose and fixed its location. Winslow v. City of Vallejo, 84 P. 191 (Sup. Cal. 1906). The location for both wires having been once established, plaintiff, as successor in title to the servient tenement, had no power, against the objection and without the consent of the defendants, to make any change in the manner of their use and position as fixed by his and the defendants' predecessors. Manning v. Port Reading Railroad Company, 54 N.J. Eq. 46 (Ch. 1895); 17 Am. Jur., "Easements," § 87, p. 988. It is the exclusive right of the owner of the dominant tenement to say whether or not the servient owner shall be permitted to change the character and place of the servitude suffering the burden of an easement localized and defined. "* * * [the defendants] may assert and enforce [their rights] to such enjoyment, regardless of any consideration of convenience of the owner of the servient tenement." Johnson v. Jaqui, 27 N.J. Eq. 552, at 555-556 (E. & A. 1876). And so, the protest of plaintiff's wife in 1940 had *9 no legal significance; plaintiff could not compel defendants to accept another location although the latter might be equally convenient with the location originally fixed. Texas Power & Light Co. v. Casey, 138 S.W.2d 594 (Civil Appeals, Texas, 1940). Had the offered pole consent been signed by or on behalf of plaintiff, a new agreement might have grown up between the parties; as it was not, their respective rights were not affected. Cf. Johnson v. Jaqui, supra.
Plaintiff contends he had no notice of the Electric Company easement because the agreement of February 19, 1919, was not recorded. This has no merit. His chain of title included the 1923 deed to the United States of America which expressly referred to the agreement by date and names of parties; the Telephone Company grant also referred to it; see William Dahm Realty Corp. v. Cardel, 128 N.J. Eq. 222 (Ch. 1940); in any event he bought the house with the guy wires visibly in place, which itself was sufficient to put him on notice to make an inquiry. McLaren v. American Telephone & Telegraph Co., supra; Central Railroad Co. v. Valentine, 29 N.J.L. 561 (E. & A. 1862); National Silk Dyeing Co. v. Grobart, 117 N.J. Eq. 156 (Ch. 1934); his wife's inquiry some six years before the accident was made, he said, "in my interest."
We conclude that plaintiff has no cause of action for negligence in the location of the guy wires and Bierce cover and that the judgment for plaintiff must be reversed; for the same reasons, the dismissal of his action as to the charge of trespass was proper.
The dismissal in respect of negligent maintenance of the guy wires and of the Bierce protector raises different considerations. The defendants stipulated in the pretrial order that at the time of the accident "they jointly maintained said wire and pole;" the defendants entered into agreements dated September 26, 1928, and May 12, 1930, under which the pole and both guy wires came under their joint ownership, maintenance and use. In that manner each became liable to plaintiff with the other for performance of the 1919 and 1920 *10 agreements of their respective predecessors with Noreg Realty Company; the 1919 agreement granted a right of entry "to maintain, keep in repair, replace and restore any and all poles, wires * * * installed under this agreement;" the 1920 agreement obligated them to "maintain * * * wires * * * and other appliances on the poles of Electric Company." Manifestly their joint obligation embraced maintenance of the Bierce protector in good repair.
The plaintiff's wife testified that "before the accident" the Bierce protector's "edges were ragged and sharp;" his neighbor next door said she was familiar with the guy wires from frequent visits to the yard and that "immediately before the accident" she observed "it was rusted and it was uneven on the edges," "it was sharp." Defendants nevertheless argue there was no proof of knowledge by either of them of this condition or evidence of its existence so long before the accident that they in the exercise of reasonable care ought to have known of it and to have remedied it, citing Schnatterer v. Bamberger & Co., 81 N.J.L. 558 (E. & A. 1911); and see Sobel v. Lincoln Construction Co., 12 N.J. Misc. 203 (Sup. Ct. 1934).
Defendants' argument mistakenly assumes that their liability could be predicated solely on the fact of notice. This is not so; the defendants were under an affirmative duty to make reasonable inspections of their easement upon plaintiff's property and to use due care to keep the guy wires and Bierce protector in good repair. Plaintiff as successor in title to the servient tenement was privy to the covenants binding on defendants which we have quoted; indeed, the covenants only declared defendants' obligations raised by law from their ownership of the dominant estate. Plaintiff as owner of the servient tenement was not bound, in the absence of his agreement assuming the obligation, to keep the easement in repair or to sustain any expense in maintaining it in proper condition; he could not interfere with defendants' enjoyment of it; since it was their property, theirs was the duty of examination and repair and as owners of the dominant estate they *11 had a right of access to and could enter upon the servient estate for the purpose. 17 Am. Jur., "Easements," § 108, page 1003; Central Railroad Co. v. Valentine, supra; United New Jersey Railroad & Canal Company v. The Crucible Steel Company et al., 85 N.J. Eq. 7, at p. 22 (Ch. 1915); affirmed, 86 N.J. Eq. 258 (E. & A. 1916). And so, "where the easement is of a character that want of repair injuriously affects the owner of the servient land, it becomes not only the right but the duty of the owner of the easement to cause all necessary repairs to be made." Washburn, The Law of Easements and Servitudes, 4th Ed. (1885), p. 733.
This duty of defendants imposed upon them the same obligations of inspection and repair which are imposed upon a landlord who covenants with his tenant to "examine and repair," in which case his agreement is construed "as by plain implication creating an obligation on the part of the landlord to use due care, in the interest of the tenant, to examine and repair" to prevent conditions causing injury, which "duty of care normally involves the duty of making reasonable inspection at proper times and of reasonable diligence in making repairs looking to the safety of the premises if such reasonable inspection disclose defective conditions;" where the duty of reasonable inspection obtains, "it follows that negligence could be inferred from lack of such inspection; and if such negligence were the proximate cause of injury to the plaintiff, there would be liability. * * * Hence, a charge that in order to hold defendant * * * he should have actual notice of its danger erroneously limited the scope of inquiry, and to the prejudice of the plaintiffs." Dulberger v. Radli, 105 N.J.L. 126 (E. & A. 1926).
The Bierce protector had been placed at least 16 years at the time of the accident; when and how the defects occurred does not appear. The defendants' duty was to make reasonable inspections of it and of the guy wires at proper times and to use reasonable diligence in making repairs when reasonable inspection disclosed defective conditions or when the *12 defects were otherwise known to them. Defendants were not required to station an observer on plaintiff's premises; their obligation was not that of insurers; if the defined duty was performed and the defect charged was not discoverable from reasonable inspections, or occurred between such inspections, there would be no liability in the absence of proof of actual knowledge of the defect.
The proofs, however, are meagre when and in what manner defendants made inspections; what there is appears in answers to interrogatories in evidence propounded by the plaintiff to defendant Electric & Gas Company as to the occasions and manner it had entered upon plaintiff's premises "for the purpose of repairing and maintaining said pole and guy wires from the time of erection thereof up to the present time." The answers, binding on both defendants under the stipulation in the pretrial order, are: "Defendant is unable to answer this question as inspections and repairs to its wires and other construction occurred at such times as the situation warranted. No detailed record of such visits * * * was kept by this defendant;" and, "defendant's employees entered upon said premises at such times as it was necessary to inspect, maintain or repair its wires and equipment affixed to said pole." Plainly, conflicting inferences may be drawn from these answers whether, if at all, the duty of due inspection was reasonably discharged. The question was for the jury, as is generally the case as to issues of reasonableness. Burr v. Adams Express Co., 71 N.J.L. 263, at 269 (Sup. Ct. 1904); such questions are for the court only when the facts are undisputed and different inferences cannot reasonably be drawn from them. Timlan v. Dilworth, 76 N.J.L. 568 (E. & A. 1908).
The questions of contributory negligence and assumption of risk were on this record properly submitted to the jury for determination. White v. Ellison Realty Corp., 5 N.J. 228 (1950); Bacak v. Hogya, 4 N.J. 417 (1950); Russell v. East Coast Shipyards, Inc., 9 N.J. Super. 1 (App. Div. 1950).
*13 The judgment in plaintiff's favor is reversed; the dismissal of his suit as to the allegations of trespass is affirmed; the dismissal as to the allegations of negligent maintenance is reversed and the cause is remanded for a new trial in that respect; costs to abide the event.