# RECORD IMPOUNDED

### NOT FOR PUBLICATION WITHOUT THE
### APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3579-19

L.B.I.,

     Plaintiff-Respondent,

v.

W.F.A.-Y.,[1]

     Defendant-Appellant.

_____

     Argued July 27, 2021 – Decided August 12, 2021

     Before Judges Rothstadt and Enright.

     On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-0532-18.

     Jeremy S. Price argued the cause for appellant (Law Offices of Jef Henninger, attorneys; Jef Henninger, on the briefs).

     Armando R. Horta argued the cause for respondent.

PER CURIAM

---

[1] Improperly pled as "W.F.A.Y."

Defendant W.F.A.-Y. appeals from the Family Part's February 27, 2020 order,[2] granting his former girlfriend, plaintiff L.B.I. a final restraining order (FRO) under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35.[3] We affirm.

We incorporate by reference the facts set forth in our prior unpublished opinion in this matter, L.B.I. v. W.F.A.-Y, A-3211-17 (App. Div. Dec. 12, 2019), but also highlight certain testimony and findings from the initial and remand hearings to provide context to the instant appeal.

Plaintiff and defendant were in a dating relationship from November 2015 to August 2017. They lived together from March to August 2017 in plaintiff's apartment. According to plaintiff, she terminated the relationship on August 20, 2017. On August 27, 2017, plaintiff filed a domestic violence complaint and obtained a temporary restraining order (TRO) against defendant, alleging defendant committed the predicate act of harassment, N.J.S.A. 2C:33-4,[4] by

---

[2]  The challenged order was amended on March 13, 2020 to include a compensatory damages award to plaintiff in the sum of $4800.

[3]  We use initials to protect the identity of victims of domestic violence and to preserve the confidentiality of these proceedings.  R. 1:38-3(d)(9)-(10).

[4]  N.J.S.A. 2C:33-4 provides, in part, that

A-3579-19

calling her over two hundred times, making her feel unsafe in her apartment. Plaintiff also alleged past instances of domestic violence.

On September 8, 2017, plaintiff amended her complaint to include two other predicate offenses; assault, N.J.S.A. 2C:12-1,[5] and criminal coercion, N.J.S.A. 2C:13-5.[6] When she amended her complaint, plaintiff did not

> a person commits a petty disorderly persons offense if, with purpose to harass another, he [or she]:
>
> . . . .
>
> (b) Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> (c) Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4.]

[5] "A person is guilty of assault if the person: (1) Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another[.]" N.J.S.A. 2C:12-1(a)(1). N.J.S.A. 2C:11-1(a) defines: "bodily injury" as "physical pain, illness or any impairment of physical condition[.]"

[6] N.J.S.A. 2C:13-5 provides, in part:

> A person is guilty of criminal coercion if, with purpose unlawfully to restrict another's freedom of action to engage or refrain from engaging in conduct, he [or she] threatens to:

A-3579-19

allege as a predicate act that defendant acted in "contempt of a [domestic violence] order." Instead, she contended defendant committed the predicate acts of assault and criminal coercion when he left plaintiff a "vulgar" voicemail on her mother's cell phone, sent two letters to plaintiff and her mother in violation of the TRO; broke into plaintiff's apartment and destroyed her belongings; contacted plaintiff's employer in attempt to get her fired from her job if she did not resume a relationship with defendant; threatened to distribute

---

(1) Inflict bodily injury on anyone or commit any other offense, regardless of the immediacy of the threat;
(2) Accuse anyone of an offense;
(3) Expose any secret which would tend to subject any person to hatred, contempt or ridicule, or to impair his credit or business repute;
(4) Take or withhold action as an official, or cause an official to take or withhold action;
(5) Bring about or continue a strike, boycott or other collective action, except that such a threat shall not be deemed coercive when the restriction compelled is demanded in the course of negotiation for the benefit of the group in whose interest the actor acts;
(6) Testify or provide information or withhold testimony or information with respect to another's legal claim or defense; or
(7) Perform any other act which would not in itself substantially benefit the actor but which is calculated to substantially harm another person with respect to his health, safety, business, calling, career, financial condition, reputation or personal relationships.

[N.J.S.A. 2C:13-5 (Emphasis added).]

explicit photographs and videos of plaintiff to her family and friends; and, followed plaintiff to her apartment twice in the days following the breakup. Plaintiff also amended her complaint to include two additional alleged past instances of domestic violence.

After a bench trial, during which the parties testified, the judge rendered an oral decision, concluding an FRO should issue in each party's favor. Pertinent to the instant appeal, the judge determined, in part,

> [defendant] did, before the incidents in the complaint, threaten to send out some sexual material related to [plaintiff], to her family and friends and that . . . he threatened before that to call her employer . . . to tell the employer about the video. And he admitted later that he did do that and told them about the video which he believed would have been in violation of her work rules and would lead her to be fired. Those are acts of harassment.
>
> And . . . also . . . he did leave the letter, P-1, on the car window after the service of the [TRO] and left the other letter, which refers to the prior episodes between them, when he removed his personal belongings. And both of those constitute violations of the restraining order.

Accordingly, the judge found defendant committed the predicate act of harassment and had violated the TRO, although plaintiff had not alleged a violation of the TRO as a predicate act. The judge also determined defendant was entitled to an FRO against plaintiff, noting defendant had testified to "a

5

series of incidents in the months leading up to [the parties'] breakup where she assaulted him."

Defendant appealed from the FRO entered against him but plaintiff did not appeal from the FRO entered against her. We vacated the FRO against defendant and remanded the matter, based on the trial court's failure to make the requisite factual findings for the entry of an FRO, consistent with Rule 1:7-4 and Silver v. Silver, 387 N.J. Super. 112 (2006).

At the remand hearing, newly retained counsel for the parties elected not to provide additional argument to the court. The same judge who presided over the initial final hearing conducted the remand hearing. The judge prefaced his remarks by noting that only defendant had challenged the FRO entered against him, so the judge confined his findings accordingly. The trial court then referred to its factual findings from the initial hearing and explained:

> The harassment finding was based on a finding that [defendant] had threatened to send sexual material to people that [plaintiff] knew and to call her employer about an issue that he believed to have been a violation of her work rules, and he admitted making that call. Those findings are still intact.
>
> I find that [defendant] did threaten to send sexual material to other people. That he did, in fact, call her employer for the purpose of trying to affect her employment. That constitutes a course of conduct designed to annoy or alarm under N.J.S.A. 2C:33-4(c)

6

and constituted harassment because it was for the purpose of harassing her and annoying or alarming her. It also constituted criminal coercion under N.J.S.A. 2C:13-5 because it was designed to unlawfully restrict [plaintiff's] freedom to engage or [refrain] from engaging in conduct, namely the resumption of her relationship with [defendant], and that he performed an act which in and of itself substantially benefit[s] the actor, but which is calculated to substantially harm another person. The actor being [defendant] and the other person being [plaintiff], with respect to his health, safety, business, calling, career, financial condition, reputation or personal relationships. His purpose in making that phone call to the employer was to restrict her ability to end her relationship with him and served no substantial benefit to him. It therefore constituted criminal coercion.[7]

The assault issue, although the assault box is checked off, the only assault [plaintiff] testified to were two remote acts that would constitute prior acts of domestic violence in 2016 where, on two separate occasions, she was injured by [defendant] and required medical attention.

Based on that, based on the prior history of assault, based on the nature of the harassment and criminal coercion, I find that [plaintiff] did prove harassment and criminal coercion. She did not prove assault as a predicate act, although she did prove it as prior acts of domestic violence. That history and the conduct she alleged and testified to and proved in terms of the

---

[7] A fair reading of the transcript suggests that the remand judge initially misquoted from the criminal coercion statute, but corrected himself to confirm his finding that the phone call defendant admittedly made to plaintiff's employer was "calculated to substantially harm" plaintiff and restrict her ability to end her relationship with defendant, without serving a "substantial benefit to" defendant.

> threats justify the final restraining order. There is a need to protect her against further domestic violence by [defendant]. Although the Appellate Division held that the violations that I found had not been alleged as predicate acts, they do go to the issue of a need for a restraining order and the fact that [defendant] violated the restraining order after it was issued, also supports the conclusion that a final restraining order is necessary. So, the final restraining order will be put back into place.
>
> [Emphasis added.]

On appeal, defendant argues "[t]he trial court erred in finding that the appellant committed the predicate acts of harassment and criminal coercion." In his reply brief, he adds the contention that "[t]he trial court erred in finding that a[n FRO] was necessary" by improperly considering the two prongs set forth in Silver. We are not persuaded.

Preliminarily, we note that we need not address arguments raised for the first time in a reply brief. See Gormley v. Wood-El, 218 N.J. 72, 95 n.8 (2014); Drinker Biddle & Reath LLP v. N.J. Dep't. of Law & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (claims not addressed in merits brief deemed abandoned and could not properly be raised in a reply brief); see also Pressler and Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2021) ("It is, of course, clear that an issue not briefed is deemed waived."). However, we do so

here because defendant's belated argument touches on the very reason we remanded this matter in 2019.

Our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We owe substantial deference to the Family Part's findings of fact because of its special expertise in family matters. Id. at 413 (citations omitted). Deference is especially appropriate in bench trials when the evidence is "largely testimonial and involves questions of credibility." Id. at 412 (citations omitted). A trial judge who observes witnesses and listens to their testimony is in the best position to "make first-hand credibility judgments about the witnesses who appear on the stand." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008). We will not disturb a trial court's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we do not accord such deference to legal conclusions and review such conclusions de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

The purpose of the PDVA is to "assure the victims of domestic violence the maximum protection from abuse the law can provide." G.M. v. C.V., 453

N.J. Super. 1, 12 (App. Div. 2018) (quoting State v. Brown, 394 N.J. Super. 492, 504 (App. Div. 2007)); see also N.J.S.A. 2C:25-18. Consequently, "[o]ur law is particularly solicitous of victims of domestic violence," J.D. v. M.D.F., 207 N.J. 458, 473 (2011) (quoting State v. Hoffman, 149 N.J. 564, 584 (1997)), and courts will "liberally construe[] [the PDVA] to achieve its salutary purposes," Cesare, 154 N.J. at 400.

To determine whether the entry of an FRO is appropriate, the court must first "determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Silver, 387 N.J. Super. at 125. If the court finds the defendant committed a predicate act of domestic violence, then the second inquiry "is whether the court should enter a restraining order that provides protection for the victim." Id. at 126. While the second inquiry "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127; see also J.D., 207 N.J. at 475-76.

Here, the remand judge found defendant not only threatened to send sexual material involving plaintiff to other people, but defendant also called her

employer to affect her employment, thereby engaging in a course of conduct for the purpose of harassing, annoying or alarming plaintiff.  Additionally, the judge found defendant threatened plaintiff that he would call her employer "to tell the employer about the video.  And he admitted later that he did do that and told them about the video, which he believed would have been in violation of her work rules."

The judge's findings that defendant committed the predicate acts of harassment and criminal coercion are amply supported by the record.  Indeed, defendant admitted during cross-examination that he "threaten[ed] to call [plaintiff's] employer to get her in trouble" and did so because he "was angry at her."  Also, when asked by plaintiff's counsel if there was "anything [he] was hoping to get by making that threat," defendant answered "Not really.  It was just something that I said in the moment."  Defendant further admitted that he contacted plaintiff's employer "[p]robably mid-September," i.e., well after the TRO was entered.

Regarding the second Silver prong, the judge observed that defendant not only admitted to certain actions, but plaintiff also "did prove [assault] as prior acts of domestic violence," and that defendant "violated the restraining order

A-3579-19

after it was issued." Accordingly, the judge was satisfied there was a "need to protect [plaintiff] against further domestic violence by [defendant]."

Given our deferential standard of review, and having reviewed the record in its totality, we find no basis to disturb the judge's factual and credibility findings, nor do we find any reason to second-guess his legal conclusions. See Cesare, 154 N.J. at 411-12.

All other points raised by defendant lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3579-19