267 N.J. Super. 473 (1993)
631 A.2d 1263
JOHN S. KLINE, ALFRED R. KLINE AND MARY KLINE, PLAINTIFFS-APPELLANTS,
v.
BERNARDSVILLE ASSOCIATION, INC., A N.J. CORP., T/A HILLSBOROUGH CENTER, THE TOWNSHIP OF HILLSBOROUGH AND THE PLANNING BOARD OF THE TOWNSHIP OF HILLSBOROUGH, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 13, 1993.
Decided October 8, 1993.
*474 Before Judges PETRELLA, BAIME and CONLEY.
Kenneth P. Fee, attorney for appellants (Mr. Fee, on the brief).
Welaj and Miller, attorneys for respondent Bernardsville Association, Inc. (Thomas C. Miller, on the brief).
*475 Frank N. Yurasko, attorney for respondents The Township of Hillsborough and The Planning Board of the Township of Hillsborough (Mr. Yurasko, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
The Hillsborough Township Planning Board (Board) granted Bernardsville Association, Inc.'s (Bernardsville) application for preliminary and final site plan approval respecting a proposed shopping center upon the condition that the applicant relocate a right of way easement held by the adjacent property owners, John, Alfred and Mary Kline. The Klines instituted an action in lieu of prerogative writs, challenging the Board's authority to relocate the easement without their consent. The Law Division granted Bernardsville's motion for summary judgment, holding that the Board could compel relocation of the Klines' right of way notwithstanding their objections. The court found that the change required by the Board was minimal and that the Klines' right of way was essentially undisturbed. The Klines appeal, contending that a planning board is not empowered to compel relocation of an easement held by a property owner who is not an applicant. We agree and reverse.
Although the salient facts are not in dispute, our consideration of the issues has been hampered by a truncated and sketchy record and briefs that are largely uninformative regarding several key points. Bernardsville owns property fronting Route 206 which it intends to develop as a shopping center. The Klines own adjacent land to the rear of that of Bernardsville. Apparently, the Klines' property is essentially landlocked. While the facts are shrouded in mystery, it appears that in 1947 the Klines were granted an easement through an 18 foot wide parcel of land that extends from Route 206 between the northerly sideline of Bernardsville's property and the southerly sideline of an adjacent shopping center known as Nelson's Corner. Apparently, Bernardsville was granted the same right of way. The parties' *476 pleadings and briefs contain inconsistent statements concerning whether the Klines' easement encroaches upon Bernardsville's property, and if so, to what extent. In their briefs, all parties claim that ownership of the 18 foot wide strip is unknown. However, at various hearings before the Board, counsel for Bernardsville represented that the property is owned by Charles and Thomas Robertson. While not cited by any of the parties, our independent research has revealed a reported condemnation opinion which identifies the Robertsons as owners of the property upon which the easement is located. See Township of Hillsborough v. Robertson, 260 N.J. Super. 37, 614 A.2d 1374 (Law Div. 1992).[1]
On February 2, 1989, the Board granted Bernardsville's application for site plan approval. Among other things, the Board's resolution required installation of a traffic light on Route 206 at the northern end of Bernardsville's frontage to serve customers of the proposed development and those of the Nelson's Corner shopping center. Location of the traffic signal was designed to permit vehicles exiting the two shopping centers to proceed south along Route 206. At present, customers of the Nelson's Corner shopping center must exit on to a side street and travel to its intersection with Route 206. It is undisputed that installation of the traffic light would substantially improve traffic safety in the area.
However, the proposed location of the traffic signal necessarily affects the 18 foot wide right of way. A minor alteration of the *477 easement is required. The easement would run from essentially the same location at the rear of Bernardsville's property, but instead of its current meandering course, the Klines' right of way would be slightly altered. Specifically, the easement would be relocated to run to the proposed traffic signal. The Board's approval thus required Bernardsville to obtain an agreement with the Klines relocating the easement as proposed. Unfortunately, negotiations between Bernardsville and the Klines proved unavailing and Bernardsville found it necessary to request the Board to either vacate or modify the condition requiring relocation of the easement.
On May 4, 1989, the Board granted Bernardsville's application and modified the condition to require "the applicant ... [to] construct a reasonable point of access for the existing driveway" of the Klines' property. Specifically, the Board directed Bernardsville to "provide a 50 ... foot wide easement for the purpose of ingress or egress ... [to and from the Klines' property] at a ... [location] along the rear of the development... with a perpetual right ... to use" the roadway for access to Route 206. Although the Board's resolution did not expressly nullify the Klines' existing easement, its net effect was to compel relocation of their right of way to funnel traffic to the proposed traffic signal on Route 206.
The Klines then commenced a prerogative writs action in which they asserted that the Board's resolution violated the Open Public Meetings Act (N.J.S.A. 10:4-6). The Law Division set aside the Board's resolution on this basis. After providing proper notice to the public, however, the Board readopted the resolution, and the Klines instituted this action.
In its oral opinion sustaining the Board's condition, the Law Division relied upon opinions permitting the courts to relocate an easement where the modification is slight and the parties' rights are fully protected. We will discuss those decisions later in our opinion. We merely note here that the Law Division assumed a municipal planning board has the same power as the courts and may relocate an easement where the interests of justice militate in *478 favor of that course. It is upon this proposition that we part company with the Law Division.
An easement is defined as "a nonpossessory incorporeal interest in another's possessory estate in land, entitling the holder ... to make some use of the other's property." Leach v. Anderl, 218 N.J. Super. 18, 24, 526 A.2d 1096 (App.Div. 1987); see also Mahony v. Danis, 95 N.J. 50, 58, 469 A.2d 31 (1983) (Schreiber, J., dissenting). Easements are created (1) by express acts of the parties, (2) by implication, or (3) by prescription. J. Cribbet, Principles of the Law of Property, 336 (2d ed. 1975). Where the easement comes into being by way of an agreement, as is apparently the case here, the "universally accepted principle" is that "the landowner may not, without the consent of the easement holder, unreasonably interfere with the latter's rights or change the character of the easement so as to make the use thereof significantly more difficult or burdensome." Tide-Water Pipe Co. v. Blair Holding Co., 42 N.J. 591, 604, 202 A.2d 405 (1964); see also Johnston v. Hyde, 33 N.J. Eq. 632, 648-49 (E. & A. 1881); Ingling v. Pub. Serv. Elec. & Gas Co., 10 N.J. Super. 1, 8, 76 A.2d 76 (App.Div. 1950); Manning v. Port Reading R.R., 54 N.J. Eq. 46, 49, 33 A. 802 (Ch. 1895); 2 Thompson on Real Property, § 427 (Replacement 1980); Annotation, Relocation of Easements, 80 A.L.R.2d 743 (1961). "Once the way is fixed, it cannot be changed without the consent of both parties." Sussex Rural Elec. Coop. v. Township of Wantage, 217 N.J. Super. 481, 490, 526 A.2d 259 (App.Div. 1987); see also American Metal Co. v. Fluid Chem. Co., 121 N.J. Super. 177, 182, 296 A.2d 348 (Law Div. 1972). It has thus been said that "[i]t is the exclusive right of the owner of the dominant tenement to say whether or not the servient owner shall be permitted to change the character and place of the [easement,] ... regardless of any consideration of convenience of the owner of the servient tenement." Ingling v. Pub. Serv. Elec. & Gas Co., 10 N.J. Super. at 8, 76 A.2d 76 (quoting Johnson v. Jaqui, 27 N.J. Eq. 552, 555-56 (E. & A. 1876)); see also Manning v. Port Reading R.R., 54 N.J. Eq. at 49, 33 A. 802.
*479 Despite the unequivocal language of these opinions, our courts have deviated from these principles on rare occasions where justice and equity plainly mandated that course. In Kruvant v. 12-22 Woodland Ave. Corp., 138 N.J. Super. 1, 350 A.2d 102 (Law Div. 1975), for example, plaintiffs instituted an action to bar a riding club from using a bridle trail which traversed property they intended to develop as a shopping center. The stable had acquired the right of way easement by prescription. Id. at 23, 350 A.2d 102. The Law division nevertheless held that it had the power to relocate the easement as long as the change was minor and the easement holder's right of way was not significantly burdened. Id. at 28-32, 350 A.2d 102. On appeal, we affirmed the judgment for the reasons expressed by the Law Division. 150 N.J. Super. 503, 376 A.2d 188 (App.Div. 1977).
In other cases, our courts have permitted relocation of easements without consent by denying injunctive relief to easement holders who sought to compel landowners to remove obstacles and restore their rights of way to their former condition. In Tide-Water Pipe Co. v. Blair Holding Co., our Supreme Court upheld the Chancery Division's order allowing the landowner to relocate the easement holder's pipeline where the landowner had improperly constructed a building over the easement holder's right of way. 42 N.J. at 591, 202 A.2d 405. Similarly, in Gilpin v. Jacob Ellis Realties, Inc., 47 N.J. Super. 26, 135 A.2d 204 (App.Div. 1957), we affirmed the Chancery Division's denial of an injunction to have the landowner tear down a building it had unlawfully erected over the easement holder's right of way. Id. at 34, 135 A.2d 204. We agreed with the Chancery Division's conclusion that relocation of the easement or compensatory damages constituted an appropriate remedy. Ibid. Concededly, these opinions are not wholly apposite because they are based in large part on the doctrine of relative hardship as it pertains to applications for injunctive relief. They nevertheless reveal a flexible approach toward the end of advancing essential justice.
*480 The question has received varied treatment in other jurisdictions. Several courts have held that the location of an easement cannot be changed without the mutual consent of the parties regardless of how necessary the modification may be and how little damage or inconvenience may result. See, e.g., Youngstown Steel Prods. Co. v. City of Los Angeles, 38 Cal.2d 407, 240 P.2d 977, 979 (1952); Edgell v. Divver, 402 A.2d 395, 397-98 (Del. Ch. 1979); Daviess-Martin County v. Meadows, 179 Ind. App. 622, 386 N.E.2d 1000, 1002 (1979); Davis v. Bruk, 411 A.2d 660, 664-66 (Me. 1980); Coast Storage Co. v. Schwartz, 55 Wash.2d 848, 351 P.2d 520, 525 (1960). Others have applied equitable principles and have compelled minor relocations where the interests of the parties are fully preserved and protected. See, e.g., Brown v. Bradbury, 110 Colo. 537, 135 P.2d 1013 (1943); Stewart v. Compton, 549 S.W.2d 832, 833 (Ky. Ct. App. 1977); Brian v. Bowlus, 399 So.2d 545, 549 (La. 1981); Millson v. Laughlin, 217 Md. 576, 142 A.2d 810, 814 (1958); Cozby v. Armstrong, 205 S.W.2d 403, 408 (Tex.Civ.App. 1947).
We favor the latter approach. Specifically, we hold that a court may compel relocation of an easement to advance the interests of justice where the modification is minor and the parties' essential rights are fully preserved. We have no occasion here to survey the outermost limits of the court's equitable powers. Obviously, questions of this nature are fact-sensitive. We merely add that relocation of an easement without the mutual consent of the parties is an extraordinary remedy and should be grounded in a strong showing of necessity.
We are equally satisfied that a planning board is not vested with the power to compel relocation of an easement at the expense of a property owner who is not an applicant. A planning board's powers are derived from the Municipal Land Use Law (N.J.S.A. 40:55D-1 to -136) and implementing ordinances. See PRB Enters., Inc. v. South Brunswick Planning Bd., 105 N.J. 1, 7, 518 A.2d 1099 (1987); Reid Dev. Corp. v. Parsippany-Troy Hills Tp., 10 N.J. 229, 238, 89 A.2d 667 (1952); State v. Hope Rd. *481 Assocs., 266 N.J. Super. 633, 648, 630 A.2d 387 (App.Div. 1993) (slip op. at 15); Estate of Neuberger v. Middletown Tp., 215 N.J. Super. 375, 384, 521 A.2d 1336 (App.Div. 1987). The Law does not grant a planning board the authority to compel relocation of an easement so as to impair or burden the rights of a non-applicant. While a planning board may condition site-plan approval on the applicant's granting a right of way to another property owner, it may not compel relocation of an easement to the prejudice of the easement holder.
We, therefore, reverse the judgment of the Law Division. Although the Board could compel Bernardsville to seek an agreement with the Klines for relocation of the easement or, failing that, direct it to commence an action in the courts, it could not itself order the change to the detriment of the Klines' rights. See N.J.S.A. 40:55D-25; N.J.S.A. 40:55D-37; N.J.S.A. 40:55D-38; N.J.S.A. 40:55D-41. The power to order relocation of an easement without mutual consent of the parties is reserved for the courts.
In their brief, the Klines contend that the proposed relocation would substantially disturb their right of way. We are convinced that the interests of justice will best be served by remanding the matter to the Law Division for a plenary hearing on that and other related questions. Specifically, the Law Division should determine whether it ought to exercise its equitable power and compel relocation of the easement. Because the Robertsons have an interest in this dispute, they should be served and permitted to appear.
Accordingly, the judgment of the Law Division is reversed and the matter is remanded for proceedings consistent with this opinion.
NOTES
[1] There, the Law Division held that a municipality must adopt an ordinance in order to exercise the power of eminent domain. Id. at 44, 614 A.2d 1374. After adopting a resolution, the Township had instituted an action to condemn the Robertsons' property in order to complete a cross access easement between Bernardsville's proposed shopping center and the Nelson's Corner shopping center. Id. at 39, 614 A.2d 1374. The Law Division stayed the condemnation action pending the Township's adoption of an ordinance authorizing it to exercise its power of eminent domain authority. Id. at 44, 614 A.2d 1374. The status of that litigation is not entirely clear and it appears that no further action was taken to condemn the Robertsons' property.