**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2866-21

BENJI[1] SWAN and
RUSSELL[2] SWAN,

     Plaintiffs-Appellants,

v.

STEPHEN LAMANNA and
LILA LAMANNA,

     Defendants-Respondents.

_____

     Argued November 27, 2023 – Decided January 2, 2024

     Before Judges Sabatino, Mawla, and Chase.

     On appeal from the Superior Court of New Jersey, Chancery Division, Cape May County, Docket No. C-000054-17.

     Frank L. Corrado argued the cause for appellants (Barry, Corrado & Grassi, PC, and Gillin Schwartz Law, LLC, attorneys; Frank L. Corrado and Joseph Christopher Gillin-Schwartz, on the brief).

---

[1] Portions of the record spell this first name "Benjie."

[2] Misstated as "Russel."

Lila Lamanna, respondent, argued the cause pro se (Stephen Lamanna, respondent pro se, and Lila Lamanna, on the brief).

PER CURIAM

The present appeal is the latest chapter in a series of long-running easement disputes between the owners of neighboring properties in Middle Township.

After a bench trial that consumed fifteen intermittent trial days, the Law Division judge determined that plaintiffs, Benji and Russell Swan, had certain easement rights with respect to one of two lots they own (Lot 21). The ruling enables them to make use of most of an unpaved private roadway—known as Gus's Beach Road—located on the property of defendants, Stephen and Lila Lamanna. The judge rejected plaintiffs' demand to modify the deeded terms of the prescriptive easement to allow them to use approximately the last 200 feet of the roadway, which veers closer to defendants' farmhouse. Instead, the judge ruled the terms of the easement did not encompass the disputed approximate 200 feet, and instead follows a straight line across a wooded, low-lying area to State Highway 47 without a driveway or roadway.

On reconsideration, the court revised its final judgment to require defendants to cooperate with plaintiffs in pursuing environmental permits to

A-2866-21

allow a roadway to extend across the low-lying area. The court specified, however, that if plaintiffs did not obtain such permits, the entire easement would be extinguished.

Plaintiffs now appeal the trial court's denial of the requested modification and its limitation of their easement rights solely to Lot 21 and not Lot 24, another nearby parcel they own. Plaintiffs further appeal the court's condition that they must obtain permits as a condition of retaining their easement rights. Although their responding brief expresses dissatisfaction with aspects of the amended final judgment, defendants have not cross-appealed.

For reasons that follow, we affirm the trial court's rulings concerning the location and terms of the easement and its denial of plaintiffs' requested modification. We do so substantially for the sound legal and equitable reasons expressed in the trial court's February 28, 2022 detailed written opinion. We reverse and remand in part, solely for the trial court's reconsideration of aspects of the permit condition.

I.

The extensive factual record and procedural history of this property dispute are well known to the parties, and we need not detail it comprehensively here. The following summary will suffice.

3

Plaintiffs acquired two tracts lying mostly to the south and west of defendants' property in Middle Township in 1992. Plaintiffs' Lot 24[3] is directly south of defendants' Lot 20, and these two lots are similarly sized long but narrow properties that run from the Delaware Bay in the west to State Route 47 to the east. Along their boundary runs an unimproved private road known as Gus's Beach Road. Gus's Beach Road was impassable from at least 1984 until approximately 2005. Gus's Beach Road is located on defendants' lot, Lot 20.

Plaintiffs' second lot is Lot 21, a small bayside lot that had been severed from Lot 20 in 1950 and sold to East Point Oyster Company ("East Point"). The 1950 deed from the Lucianos to East Point for Lot 21 describes two easements, a ten-foot-wide easement allowing Lot 21's owners access north to Bay Avenue, and a thirty-three-foot-wide easement east to State Route 47.

That same year, the Lucianos and East Point signed a lease that provided East Point with space to conduct an oyster shucking operation on the bay shore and allowed it to use a "private road" on the property, Gus's Beach Road.

---

[3] Over the years, Middle Township has numerically redesignated the lots subject to this appeal. Lot 20, which is owned by defendants, had been referred to as Lot 6; Lot 7.02, owned by plaintiffs, is now Lot 24; Lot 9, owned by plaintiffs, is now designated Lot 21. For the sake of clarity, we refer to all lots by their current designations.

Plaintiffs' two lots, Lots 21 and 24, are not strictly contiguous, and Lot 21 does not afford Lot 24 access to Bay Avenue.

The deed from Luciano to East Point for Lot 21 contains the following easement terms:

> BEGINNING at a point set at the high[-]water mark of the easterly shore of Delaware Bay, said point being five feet from a concrete monument on a course north thirty-seven degrees and nine minutes east, said monument being the northwest corner of the above described land; thence south fifty-two degrees and fifty-one minutes east, one hundred forty-three and fifty-three hundredths feet to a point in the center line of a proposed avenue to be known as Bay Avenue; thence along the center of said proposed Bay Avenue, south twenty-four degrees and thirty-two minutes west, one hundred fifty-five feet to the center of another proposed avenue, and there to end. Said courses and distances are the center line of said right-of-way, the width of which shall be a total of ten feet measured five feet at right angles from the above line in either direction.

The deed goes on to recite:

> TOGETHER with a further right-of-way from the end of the immediately preceding right of way to State Highway Route S-4[7] on a course south forty-eight and thirty-nine minutes east, running to said State Highway Route S-4[7] for a width of thirty-three feet, the aforesaid course representing the center line thereof.

5

The first paragraph above, concerning the ten-foot easement, grants Lot 21's owners access to Bay Avenue. At trial, defendants' expert, Joseph Grabas, explained that the thirty-three-foot easement running between the end of Lot 21's ten-foot easement to Bay Avenue and Route 47 describes a "straight line that runs up along the property line." Grabas acknowledged that the easement described in the deed and Gus's Beach Road were often "congruent." However, for the purposes of selling a bay side portion of Lot 20 as Lot 21, as Luciano did in this transaction, Grabas opined that an express easement was preferable because "the purchaser of that lot wants to know that forever they'll be able to access that lot."

Defendants acquired Lot 20 from the heirs of the Lucianos in 1984. In 1985 or 1986, defendants purchased two gates. The first gate was installed at the time of purchase at the eastern end of the now-disputed 200-foot travel way that defendants consider their driveway, controlling access from Route 47 onto the travel way.

In 1989 defendants installed another gate blocking access to those traversing Bay Avenue to points south. Defendants installed the gates at least in part to prevent illegal dumping, which was common on the property. The dumping problem was so pervasive, including large appliances and discarded

6

construction materials, that portions of Gus's Beach Road were impassible until approximately 2005 when defendants arranged with a tenant to clear the roadway.

As noted above, in 1992, plaintiffs purchased their two tracts, Lots 21 and 24, in a single transaction from the Estate of Ernest Schleusener. When asked at trial if "the Swans acquired the same package of rights that was transferred in 1963?" plaintiffs' expert, Lewis Conley, answered "Yes." Accordingly, plaintiffs possess an express easement for access to Route 47 from Lot 21.

Defendants blocked plaintiffs' access to the disputed 200 feet of travel way between Gus's Beach Road and Route 47 in 2004, and plaintiffs removed the obstruction in 2006. Plaintiffs continued to assert their rights to the easement during this time, and defendants filed trespassing charges against plaintiffs in 2009 and 2010.

Meanwhile, in November 2009, plaintiffs successfully sued defendants to acquire a prescriptive easement across Lot 20 for the benefit of Lot 24. Lamanna v. Swan, No. A-1280-10 (App. Div. July 20, 2012) (slip op. at 4, 57). We affirmed that particular easement grant in our unpublished 2012 opinion. Id. at 57. That prescriptive easement for the benefit of Lot 24 allows plaintiffs to traverse the far western end of defendants' property to access Bay Avenue,

which, in turn, allows plaintiffs to access Route 47 via Highs Beach Road, a public street that runs to the north of defendants' property. Id. at 36. Defendants' petition for certification to the Supreme Court was denied. Lamanna v. Swan, 213 N.J. 568 (2013).

The central issue in the present case is that Gus's Beach Road deviates from the path of the express thirty-three-foot-wide easement that runs from the termination of the ten-foot-wide easement in the west to Route 47 in the east. Although the easement and Gus's Beach Road are largely contiguous, and run in a straight line along the border of Lots 20 and 24, the 200 feet of Gus's Beach Road approaching Route 47 veer off the path described in the easement and cross Lot 20 to intersect with Route 47 thirty-five feet further north. On cross-examination at trial, defendants' expert Grabas, agreed that the "vast majority" of the easement is contiguous with Gus's Beach Road.

Plaintiffs assert their easement rights can only be protected if the court uses its equity powers to modify the easement by relocating the easement to coincide with the disputed 200-foot portion of Gus's Beach Road, thus allowing plaintiffs to access Route 47 in that more direct manner without using the easement access to Highs Beach Road. Defendants insist that the disputed 200

feet of Gus's Beach Road is their private driveway to Route 47, and that plaintiffs have no right to access it.

In October 2017, plaintiffs filed this lawsuit in the Law Division, seeking to enforce an alleged express easement that would allow them direct access from both of their lots to Route 47 via Gus's Beach Road. Defendants asserted counterclaims related to a culvert that plaintiffs allegedly blocked, harassment, and other poor conduct by plaintiffs, which are not the subject of a cross-appeal and are not before us.

When the initial easement for Lot 21 was granted, no permitting was required to traverse wetlands with a roadway or driveway that would connect it to Route 47. That situation has changed due to the enactment of environmental laws and regulations.

Plaintiffs have inquired with the New Jersey Department of Environmental Protection ("DEP") about acquiring permits. They were informed that, although the issuance of permits was possible, plaintiffs' existing alternative access to Route 47 via Bay Avenue would hamper their application. The DEP's response, read into the transcript at trial, is as follows:

> Dear Ms. Swan,
> I am writing in response to your letter inquiring about what sort of permits would be required for construction of a new road to your existing home. It

would appear the primary permit necessary would be an individual permit under the Fresh Water Wetlands Protection Act. <u>Individual permits are often difficult to receive since for nonwater dependent activities such as a road applicants are required to demonstrate there is no alternative location for the activity that would not impact on a fresh water wetland</u>. Since the activity in this case is a new road to access your existing home there already exists a nonwetland alternative, the existing road, <u>it would be very difficult for you to demonstrate a new road is necessary</u>. In addition to satisfying the alternative test non water dependent activities that impact on threatened and endangered species habitat also have to demonstrate the activity as a compelling public need greater than the need to protect the wetland. <u>Again, since you already have use of a viable access road to your property it will be difficult to satisfy the compelling public need argument</u>. I trust the above addresses your immediate concerns. But should you have any further questions please do not hesitate to contact me.

[(Emphasis added).]

Following the lengthy bench trial, on February 28, 2022, the court issued an order and accompanying opinion. It found that the express easement did not include access to an existing travel way that extended from within the bounds of the easement across defendants' property to Route 47.

Plaintiffs moved for reconsideration. On April 25, 2022, the court granted that motion in part, issuing an amended final judgment ordering plaintiffs to engage in a "good faith" effort to obtain "all applicable permitting to repair or

10

improve the wooded, low-lying area contained in the right of way at the intersection of Route 47." The amended final judgment also ordered defendants to cooperate with any "professional work or inspection necessary for the same[,]" and detailed procedures by which the parties could petition the court to resolve any future disputes.

This appeal by plaintiffs ensued. As clarified at oral argument, they raise three points: (1) the trial court erred in denying their request to modify the easement so as to include the approximate 200 feet of roadway; (2) the court should have extended their easement rights for Lot 21 to their other parcel, Lot 24; and (3) the permit condition imposed by the trial court is inequitable and should be excised.

## II.

Our standard of review is well known. "Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review . . . ." Seidman v. Clifton Sav. Bank, 205 N.J. 150, 169 (2011). An appellate court shall "not disturb the factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" Id. at 169 (second alteration in original)

11

(quoting In re Trust Created by Agreement Dated December 20, 1961, 194 N.J. 276, 284 (2008)).

The trial court's findings of fact are "binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998); see also Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 483-84 (1974). However, we owe no comparable deference to the trial court's interpretation of the law or its application of the law to the facts, which we review de novo. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Viewed through this appellate prism, we proceed to consider in turn each of plaintiffs' arguments.

A.

Plaintiffs first contend the trial court erred by failing to modify the easement so that the disputed 200 feet of travel way is considered part of Lot 21's express easement. They argue the easement must include an implied right to make minor deviations necessary to engender full enjoyment of the easement. They assert the court erred by declining to modify the easement, comparing this case to Kline v. Bernardsville Ass'n, 267 N.J. Super. 473, 480 (App. Div. 1993),

12

in which we allowed modification where it was "minor and the parties' essential rights are fully preserved."

The trial court explicitly found that plaintiffs have an easement appurtenant over the ten-foot-wide and thirty-three-foot-wide easements and the associated travel ways in order to access Lot 21 from Route 47. However, the court also made clear that plaintiffs' easement "specifically exclude[s]" the approximately 200 feet where the travel way deviates from the easement by crossing a corner of defendants' property and connecting to Route 47.

In making that finding, the court largely relied on the testimony of Grabas, who the court found "more persuasive" than plaintiffs' expert because of his background in title work and his clear descriptions of the competing "deeds, leases, easements, and other documents in evidence." As the trier of fact, the court had the prerogative to find an expert witness's testimony more credible than that of an opposing expert. Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85-86 (App. Div. 1961) (citations omitted). This principle flows out of the well-known proposition that jurors, or a judge in a bench trial, have the best "opportunity to hear and see the witnesses and to get a 'feel' for the case that the reviewing court [cannot] enjoy." Twp. of W. Windsor v. Nierenberg,

13

150 N.J. 111, 132 (1997) (quoting State v. Whitaker, 79 N.J. 503, 515-16 (1979)).

The trial court found there is no "latent ambiguity" in the deeded easement. The court agreed with defendants' contentions that the 200-foot deviation between Gus's Beach Road and the path of the express easement is supported by historical documentation, namely the 1950 lease from Luciano giving express permission to an oyster cultivation business (i.e., East Point) to use the "private roadway" (i.e., Gus's Beach Road) that connected Route 47 to the oyster shelling lots that East Point used.

The court also found that the disputed 200-foot portion of the travel way is significantly closer to defendants' residence than the deeded easement, and that allowing plaintiffs to use the driveway would "affect the peace and quiet enjoyment of [defendants'] property."

These findings are well supported by the record. They are also consistent with the applicable legal principles concerning easement rights.

"An easement is defined as 'a nonpossessory incorporeal interest in another's possessory estate in land, entitling the holder . . . to make some use of the other's property.'" Kline, 267 N.J. Super. at 478 (quoting Leach v. Anderl,

218 N.J. Super. 18, 24 (App. Div. 1987) (omission in original)). There are "[s]ix factors . . . integral" to an easement:

> (1) the fact that it is an interest in land which is in the possession of another; (2) the content of the interest as a "limited" use or enjoyment of the land in which the interest exists; (3) the availability of protection of the interest as against interference by third persons; (4) the absence of terminability at the will of the possessor of the land; (5) the fact that it is not a normal incident of a possessory land interest, and (6) the fact that it is capable of creation by conveyance.
>
> [Leach, 218 N.J. Super. at 24 (quoting Town of Kearny v. Mun. Sanitary Landfill Auth., 143 N.J. Super. 449, 459 (Law Div. 1976)).]

There are three kinds of easements: easements "by implication; by an express conveyance; or by prescription." Ibid. (citing Mahoney v. Danis, 95 N.J. 50, 58 (1983) (Schreiber, J., dissenting) (citing John E. Cribbet, Principles of the L. of Prop. 336 (2d ed. 1975))); accord Mandia v. Applegate, 310 N.J. Super. 435, 443 (App. Div. 1998). The second category pertains here.

To expressly convey an easement, a precise description of the easement must be recorded in a deed or other written instrument. Tide-Water Pipe Co. v. Blair Holding Co., 42 N.J. 591, 604 (1964). "What the easement holder's rights are . . . depends first of all on the intent of the parties as expressed in the language of the grant . . . ." Ibid. "Where the meaning is plain, as derived from

the language read as an entirety and in the light of the surrounding circumstances, it will control without resort to artificial rules of construction." Id. at 605 (citing Hammett v. Rosensohn, 26 N.J. 415, 423 (1958)).

Conversely, where the language of the instrument is not plain, "the question becomes a mixed one of law and fact to be determined within the framework of the universally accepted principle of easement law that the landowner may not . . . unreasonably interfere with the [easement holder's] rights or . . . make the use thereof significantly more difficult or burdensome." Id. at 604. In such a case, the written instrument "must be read as a whole, without artificial emphasis on one section, with a consequent disregard for others. Literalism must give way to context." Borough of Princeton v. Bd. of Chosen Freeholders of Cnty. of Mercer, 333 N.J. Super. 310, 325 (App. Div. 2000), aff'd, 169 N.J. 135 (2001).

"[A]rising out of every easement [is] an implied right to do what is reasonably necessary for its complete enjoyment . . . ." Tide-Water Pipe, 42 N.J. at 604. However, that implied right can only be exercised in a "reasonable manner as to avoid unnecessary increases in the burden upon the landowner." Ibid. (citing Lidgerwood Ests., Inc. v. Pub. Serv. Elec. & Gas Co., 113 N.J. Eq. 403 (Ch. 1933)).

On rare occasions "a court may compel relocation of an easement to advance the interests of justice where the modification is minor and the parties' essential rights are fully preserved." Kline, 267 N.J. Super. at 480. Where a court considers such a remedy, it should be mindful that "relocation of an easement without the mutual consent of the parties is an extraordinary remedy and should be grounded in a strong showing of necessity." Ibid. (emphasis added). A relocation meeting these stringent criteria would be an exercise of the court's "equitable power." Id. at 481.

In the illustrative case of Tide-Water Pipe, the plaintiff pipeline company acquired an easement in 1914 to run pipelines under a property and "with free ingress and egress, to construct, operate, repair, replace, maintain, and from time to time alter and remove the same in such manner as it may desire." 42 N.J. at 594. The grant also specified that the pipelines "shall be so laid as not to interfere with the usual cultivation of the premises nor with any buildings thereon." Ibid. By 1937, a factory and two commercial or industrial buildings were constructed on the property. Id. at 596-97.

The defendants in Tide-Water Pipe "acquired the property in 1957 with actual notice of the easement and the location of the lines." Id. at 596. In 1961 the defendants proposed expanding a building over the lines and encasing the

17

pipelines.  Id. at 597.  The plaintiff objected to the encasing, but the defendants decided to proceed, and the plaintiff sued to enjoin construction.  Ibid.  The plaintiff objected to encasement because it interfered with its ability to repair the pipelines in a timely and cost-efficient manner.  Id. at 598-99.  The most timely and cost-efficient manner for repairing leaks is known as "straight-down digging" and that method cannot be used where a pipeline is encased.  Id. at 599.

The Court in Tide-Water Pipe ruled that the language of the grant of the easement was "plain enough" and "broad" and did not require the application of "artificial rules of construction."  Id. at 605.  Nonetheless, the Court analyzed whether accessing the pipes by digging straight down was "reasonably necessary for the full enjoyment of the easement or only for the mere convenience of its holder."  Id. at 607.  The Court agreed with the trial court's finding of reasonable necessity "because of the substantially additional burden in time and money" that the plaintiff would incur to repair the pipelines if they were encased.  Ibid.  Accordingly, the Court upheld the ruling that the defendants were not entitled to modify the plaintiff's easement by building over it.  Id. at 608.

Here, plaintiffs have a recorded appurtenant easement that stretches from the Delaware Bay to Route 47.  The existence of this easement is not in dispute.  What is in dispute is whether that easement tracks the path of an existing travel

18

way. The court, relying on the expert testimony of Grabas, reasonably determined that the easement and the travel way, (Gus's Beach Road) are not identical.

The court declined to prescribe the "extraordinary remedy" of relocating that easement. Kline, 267 N.J. Super at 480. That decision is well supported by our case law. While there is an "implied right to do what is reasonably necessary for [the] complete enjoyment" of an easement, that implied right can only be exercised in a "reasonable manner as to avoid unnecessary increases in the burden upon the landowner." Tide-Water Pipe, 42 N.J. at 604. The trial court's finding that the disputed travel way is closer to defendants' residence than the express easement, and the associated conclusion that modification of the easement would diminish defendants' "quiet enjoyment" of the property, is well-supported by the record.

Plaintiffs minimize the proximity of defendants' residence to a modified easement roadway that plaintiffs and their visitors would use. They stress the roadway would only be about 165 feet from the residence, and that such a distance would not significantly diminish defendants' quiet use and enjoyment of their dwelling. The trial court reasonably found to the contrary. By numerical comparison, we note that the Municipal Land Use Law ("MLUL") generally

requires notices of land use applications to be served on all nearby owners whose properties are within 200 feet of the applicant's property. N.J.S.A. 40:55D-12(b). Although the MLUL's 200-foot notice requirement does not govern the present parties' easement rights, the statute reflects a concern that living within at least 200 feet of a neighbor's property can affect one's quality of life if the neighbor obtains permission to use the property a certain way. In any event, the trial court had ample reason to conclude that the roadway's proximity would detract from defendants' quiet enjoyment of their home.

We also concur with the trial court that plaintiffs have not demonstrated "necessity" to modify the easement. As the previous litigation established, plaintiffs can gain access to Route 47 through their separate easement connecting to Highs Beach Road. To be sure, that route is indirect and less convenient. But it is not manifestly vital to plaintiffs to access Route 47 by driving past defendants' residence.

In sum, the trial court had sound reasons—grounded in the factual record and consistent with the law—to reject plaintiffs' request for the "extraordinary remedy" of modification. Kline, 267 N.J. Super. at 480.

A-2866-21

B.

Plaintiffs further seek this court to alter the trial court's judgment and specify that their easement rights attach not only to their Lot 21, but also to Lot 24. We decline to do so.

This argument rests upon the fact that although the Lucianos conveyed easement rights to East Point to be used by Lot 21, East Point bought Lot 24 from Lucianos' neighbor directly to the south in 1950. Thereafter, in 1963, East Point conveyed Lots 21 and 24 to a buyer in a single transaction. Ownership of those two lots was subsequently conveyed to other successors in title until plaintiffs acquired them in 1992.

Plaintiff argues that the easement rights originally conveyed solely to Lot 21 in 1950 are now also rights attached to Lot 24, because the lots have had common ownership and plaintiffs bought the lots in a single transaction. This argument proves too much. The easement originated in the 1950 deed to Lot 21 only. The grantor did not specify that the easement be attached to other parcels. The plain language of the conveyance controls. Tide-Water Pipe, 42 N.J. at 605.

Basic principles of property law undermine plaintiffs' argument. For instance, suppose a deed granted the Owner of Blackacre an easement to travel on the Grantor's property. If the Owner separately acquired Greenacre and

21

Brownacre, which are also nearby parcels, that does not mean that the easement is now expanded to those additional parcels and thereby potentially increasing the usage of the easement. Such an expansion would deviate from the Grantor's original intent. Id. at 604.

We therefore decline to alter the judgment to encompass Lot 24 in addition to Lot 21.

## C.

Plaintiffs argue the trial court erred in imposing permit requirements as a condition of retaining the easement. In its first final judgment, issued February 28, 2022, the court ruled:

> Barring [plaintiffs] obtaining a permit or other approvals to construct a roadway and constructing said roadway over the wooded, low-lying area contained in the deeded right of way at the intersection of Route 47, plaintiffs are barred from utilizing the right of way eastward of its intersection with the eastern boundary of the prescriptive easement over Lot 20 granted by previous judgment of this court up to its intersection with Route 47.
>
> [(Emphasis added).]

In its written opinion supporting the first final judgment, the court elaborated that "the purpose of the 1950 deeded easement/ right of way is extinguished for the long portion of the right of way starting at Route 47 and

ending at the northern boundary of the prescriptive easement previously granted by judgment." (emphasis added).

The trial court partially granted plaintiffs' ensuing motion for reconsideration. In its written opinion the court explained reconsideration was warranted "as to its decision concerning the process of plaintiff seeking appropriate permits/approvals in relation to the roadway plaintiffs may seek application to build over the low-lying area at the easement's intersection with R[oute] 47." The court reaffirmed that plaintiffs, with proper notice to defendants, would be able to utilize portions of defendants' property in order to construct a new travel way in line with the easement, but otherwise left intact its earlier holdings related to the easement.

The court partially granted plaintiffs' reconsideration motion, upon further reflection, because:

> [T]he language utilized in its judgment was unreasonable and ineffective as [it] failed to adequately set forth a fully detailed process concerning any future permit applications made by plaintiffs for the low-lying area contained in the easement/ right of way including clearly setting forth the responsibilities of the parties as to such process.
>
> [(Emphasis added).]

23 <span>A-2866-21</span>

However, the court maintained that "this term in the judgment" confirming plaintiffs' right to clear the last 200 feet of the easement served to "extinguish" their inability to use the easement and therefore the "purpose" of the modification that plaintiffs were requesting. The court further noted that due to the previously granted prescriptive easement, plaintiffs "have 'street' access to Lot 21 and have ingress and egress to Lot 21 over the prescriptive easement to Bay Ave to Highs Beach Road to R[oute] 47[.]" In the court's assessment, the amended final judgment "remedied the entire situation which has caused disputes[,]" and "[p]laintiffs have no less access to Lot 21 and the property where their home is located on Lot 24 due to the court's judgment herein."

Litigants may seek reconsideration if the disposition of a relevant issue was not properly explained by the court. Calcaterra v. Calcaterra, 206 N.J. Super. 398, 403 (App. Div. 1986) (citing R. 4:50-1). As the trial court recognized, the language in its initial final order was insufficient to guide plaintiffs' actions with respect to permitting. This is an appropriate basis for reconsideration. Ibid. So was the trial court's pragmatic determination that defendants must reasonably cooperate with plaintiffs in the permit application process.

Even so, the portion of the amended judgment requiring plaintiffs to pursue a permit is problematic. As the DEP's letter reflects, it appears it will be difficult and perhaps impossible for plaintiffs to obtain a permit that would authorize construction of 200 feet of roadway over swampy terrain that may well be protected wetlands. Given that difficulty, it appears the trial court's condition of plaintiffs obtaining a permit in order to maintain their easement rights may be too onerous and inequitable. Plaintiffs assert that they may still want to make non-vehicular use of the easement through the 200-foot area. The trial court's decisions did not address such a possibility. The court also did not consider explicitly whether plaintiffs would make some use of the roadway in traveling back and forth along the boundary, without exiting onto Route 47.

Accordingly, we remand this matter to the trial court, for the limited purpose of reconsidering whether the permit condition of the amended judgment should be revised in a manner that considers these equitable considerations. We intimate no views on the appropriate outcome.

Affirmed in part, and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2866-21