**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2551-22

JOHN AND LORI
WESTERHOLD,

     Plaintiffs-Respondents/
     Cross-Appellants,

v.

NORMANDY BEACH
ASSOCIATES, INC. and
NORMANDY BEACH
IMPROVEMENT
ASSOCIATION,

     Defendants-Appellants/
     Cross-Respondents,

and

TOWNSHIP OF BRICK, NEW
JERSEY,

     Defendant.

_____

Argued November 13, 2024 – Decided January 16, 2025

Before Judges Gilson, Firko, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. C-000037-20.

H. Lockwood Miller, III argued the cause for appellants/cross-respondents (Goldberg Segalla LLP, attorneys; Daniel L. Klein, of counsel and on the briefs; H. Lockwood Miller, III, on the briefs).

Mark J. Oberstaedt argued the cause for respondents/cross-appellants (Archer & Greiner, PC, attorneys; Mark J. Oberstaedt and Alexis M. Way, on the briefs).

PER CURIAM

This appeal involves disputes between plaintiffs, John and Lori Westerhold, who own beachfront property, and two beach associations, defendants Normandy Beach Associates, Inc. (NBA) and Normandy Beach Improvement Association (NBIA). The central dispute is whether plaintiffs have a right to walk directly from their property across NBA's property to access the ocean. NBA and NBIA appeal from an order granting partial summary judgment to plaintiffs and finding that plaintiffs have an implied easement to walk across NBA's property and dunes that have been built on the property. Because there are disputed issues of material fact concerning whether plaintiffs have an implied easement, we reverse, vacate the order granting partial summary judgment to plaintiffs, and remand the easement issues for further proceedings.

Plaintiffs cross-appeal from an order denying their motion to amend their complaint to add an individual defendant, E. Stephen Kirby, and assert claims of malicious prosecution and liable per se against Kirby. They also cross-appeal from an order that effectively dismissed their claims for attorneys' fees and punitive damages. We affirm those orders because plaintiffs do not have evidence to support claims of malicious prosecution or liable per se against Kirby. Plaintiffs also have no right to attorneys' fees or punitive damages in this action.

I.

In 1921, Coast and Island Development Company (C&I Co.) acquired a large tract of oceanfront property in Ocean County. Thereafter, C&I Co. subdivided the property to create what is now known as Normandy Beach. Normandy Beach is a community of individually owned properties with the beach land owned by NBA. Normandy Beach is located in Brick Township and Toms River Township.

In connection with the subdivision of the land to create Normandy Beach, in 1925, C&I Co. filed the "Plan and Map of Normandy Beach" (the 1925 Plan) with the Clerk of Ocean County. The 1925 Plan provided for over seventy sublots, which would be sold as individual properties on which the owners could

build single-family homes.  The sublots were organized into twenty-five blocks, eight of which fronted the beach.  The beach itself was reserved for ownership by a community association and was eventually conveyed to NBA.  Some of the original advertisements for Normandy Beach told prospective owners that they would have access to the beach for "[s]urf [b]athing" and "[s]urf [f]ishing."

NBA "sets strategic direction and provides the long[-]range planning function for the [Normandy Beach community] in terms of properties, buildings[,] and major capital expenditures."  NBIA is a not-for-profit entity that does "any and all things necessary or incident[al] to the improvement" of Normandy Beach.  As such, NBIA is regarded as the "operating arm" of the two associations.

The NBA beach property extends from the mean high-water line of the Atlantic Ocean to the beachfront lots.  The 1925 Plan does not expressly provide for easements or points of access from the individual lots to the NBA beach.  It does, however, show eight avenues that end at the NBA beach property.  The 1925 Plan also reserved an area for a potential boardwalk and a two-foot "buffer" between the proposed boardwalk and the eastern boundaries of the beachfront lots.  The proposed boardwalk was never built.

4

Plaintiffs own property known as 526 Ocean Terrace, Normandy Beach, Brick Township, which consists of two beachfront lots (plaintiffs' property). Plaintiffs bought their property in 2000. The chain of title for their property runs from a succession of sales originating with a sale in 1929 from C&I Co. to Samuel Berger. None of the property transfers in plaintiffs' chain of title include express language identifying an easement over NBA's property.

After plaintiffs acquired their property in 2000, they became members of NBA. It is undisputed that from 1929 until 2018, the predecessor owners of plaintiffs' property, as well as plaintiffs, directly accessed the NBA beach property by walking from their property to the beach.

In 2012, Hurricane Sandy struck the Jersey Shore, heavily damaging the NBA and plaintiffs' properties. Following Hurricane Sandy, the United States Army Corps of Engineers (Army Corps) and the New Jersey Department of Environmental Protection (NJDEP) worked together to repair and restore beaches along the coast of New Jersey, including by constructing and restoring dune systems.

As a condition for undertaking those beach replenishment projects, the Army Corps required all beachfront property owners to grant the NJDEP and local municipalities a perpetual easement and right of way over their property

(the Perpetual Easements). NBA and plaintiffs each granted the NJDEP and Brick Township a perpetual easement to construct and preserve "a public beach, dune system, and other erosion control and storm damage reduction measures." Under the Perpetual Easements, property owners retained "the right to construct a dune overwalk structure in accordance with any applicable Federal, State, or local laws or regulations" to gain access to the beach.

As part of the beach replenishment projects, governmental entities constructed protective dunes on the western portion of the NBA's property and eastern portion of plaintiffs' property. Accordingly, by the fall of 2018, plaintiffs' property was separated from the beach by dunes that had been constructed under the Perpetual Easements.

In November 2018, plaintiffs built a walkover that allowed them to cross over the dunes and access the beach directly from their property. The following summer, in July 2019, Brick Township issued notices of violations to plaintiffs and NBA concerning plaintiffs' dune walkover and directing both parties to "correct these issues . . . by removal of the access . . . [or face] [v]iolations and penalties." The next month, in August 2019, NBIA removed plaintiffs' dune walkover. Thereafter, a wooden fence was erected between plaintiffs' property and NBA's property. The parties dispute who or which entity built the fence.

Thereafter, NBA took the position that beachfront property owners, including plaintiffs, should access the beach by using the nearest beach access point at the end of each of the eight avenues.

In February 2020, plaintiffs filed a complaint against NBA, NBIA, and Brick Township. They asserted claims of breach of an express easement; breach of an easement appurtenant; violation of riparian rights; nuisance; trespass; equitable estoppel; promissory estoppel; unlawful interference with easement rights; and inverse condemnation. Thereafter, they amended their complaint to include claims for fraud and an implied easement. As part of their damage claims, plaintiffs requested awards of attorneys' fees and punitive damages.

Approximately a year after instituting their action, plaintiffs moved for leave to amend their complaint to add Kirby, the president of NBA, as a defendant and to assert claims of malicious prosecution and liable per se against Kirby. During discovery, plaintiffs learned that in August 2019, Kirby attempted to have a criminal complaint filed against John Westerhold. Kirby told the police that John Westerhold had engaged in criminal mischief and trespass by repeatedly crossing over NBA's property and breaking a fence that had been erected. Less than two weeks after Kirby sought to have the criminal

7

complaint issued, he was informed by the municipal court that it had found no probable cause to issue the complaint and, therefore, that the matter was closed.

At his deposition, Kirby admitted that he never actually saw John Westerhold walking over NBA's property or breaking the fence. Instead, he testified that he saw other people, who he could not identify, walking from plaintiffs' property to NBA's property.

After hearing oral argument, the trial court denied plaintiffs' motion to amend the complaint to add claims against Kirby. The court reasoned that the malicious prosecution claim would be futile because Kirby had probable cause to make the complaint. The court also held that the liable per se claim would be futile because it was essentially based on the malicious prosecution claim. The trial court then entered an order on May 21, 2021, memorializing its denial of plaintiffs' motion to amend the complaint.

Following further discovery, in October 2021, plaintiffs moved for partial summary judgment on their claim for an implied easement. On November 22, 2021, after hearing oral argument, the court issued an order granting plaintiffs partial summary judgment on their claim for an implied easement to cross NBA's property.

8

The trial court based its ruling on several documents: the original advertisements for properties in Normandy Beach, photographs from the 1920s, and the restrictions in the deeds to the beachfront lots. Concerning the advertisements, the trial court reasoned that the purchasers of beachfront lots, including Berger, would have viewed the lots as having direct access to the beach. In reaching that conclusion, the trial court also relied on historic photographs, which showed that there was nothing between the beachfront lots and the beach.

Regarding the restrictions in the deeds, the trial court noted that those restrictions required beachfront lots to build more expensive homes with certain setbacks, windows, and fences and, therefore, the court inferred that beachfront property owners were getting something more than owners of non-beachfront lots. The trial court went on to conclude that the something more was direct access to the beach and ocean.

The trial court also reasoned that it was "common sense" that the owners of beachfront lots would not "feel obligated to walk along what was initially a paper street, not even an actual road, to a street end and then walk to the beach or to the water." Finally, the trial court noted that there were no dunes near plaintiffs' property until sometime in the 1960s. Therefore, the trial court

9

surmised that after the government constructed dunes, plaintiffs had a right to build a walkway over the dunes to continue the access that they and their predecessor owners had enjoyed since the 1920s.

Following the trial court's grant of partial summary judgment, plaintiffs applied for and obtained a permit from Brick Township to build a new at-grade dune walkover. The walkover was then constructed in 2021.

In 2022, NBA and NBIA moved for summary judgment to dismiss all plaintiffs' remaining claims. The trial court granted that motion in part, dismissing six counts. Thereafter, the parties voluntarily agreed to dismiss counts four, three, and six, and the court granted Brick Township's motion for summary judgment on all remaining claims against it. That left plaintiffs' damage claim related to their count for an implied easement.

Shortly before the remaining count was to be tried, NBA and NBIA moved to preclude plaintiffs from presenting evidence concerning their claims for attorneys' fees and punitive damages. After hearing argument, the trial court granted that motion and, on March 14, 2023, entered a final judgment dismissing plaintiffs' remaining claims.

Defendants now appeal from the order granting partial summary judgment to plaintiffs on the implied easement claim. Plaintiffs have cross-moved from

the orders denying their motion to amend the complaint to add claims against Kirby and granting defendants' motion to bar plaintiffs from presenting evidence of their claims for attorneys' fees and punitive damages.

II.

We begin by addressing NBA and NBIA's appeal. They contend that there are genuine disputed issues of material fact concerning whether plaintiffs have an implied easement across their property. We agree and therefore reverse the summary judgment order granting the implied easement.

Appellate courts review a grant of summary judgment de novo, "applying the same standard used by the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). We do not defer to the trial court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

An easement is "a non-possessory interest in another person's land." Borough of Harvey Cedars v. Karan, 214 N.J. 384, 390 n.1 (2013). It "is not the equivalent of the ownership of property." Seals v. Cnty. of Morris, 210 N.J. 157, 177 (2012). Instead, an easement entitles the holder to make a specific "use of the other's property." Kline v. Bernardsville Ass'n, Inc., 267 N.J. Super. 473, 478 (App. Div. 1993) (quoting Leach v. Anderl, 218 N.J. Super. 18, 24 (App. Div. 1987)). "An easement appurtenant is created when the owner of one parcel of property (the servient estate) grants rights regarding that property to the owner of an adjacent property (the dominant estate)." Rosen v. Keeler, 411 N.J. Super. 439, 450 (App. Div. 2010) (citing Vill. of Ridgewood v. Bolger Found., 104 N.J. 337, 340 (1986)).

An easement may be "created (1) by express acts of the parties, (2) by implication, or (3) by prescription." Kline, 267 N.J. Super. at 478. An easement by implication rests on the concept that parties make conveyances "with reference to the actual, visible and known condition of the properties." Leach, 218 N.J. Super. at 25 (quoting Mahony v. Danis, 95 N.J. 50, 59 (1983) (Schreiber, J., dissenting)). Accordingly, the law presumes that conveyances do not intend to change the "benefits and burdens" that belong to the properties at the time of the conveyance. Ibid. (quoting Mahony, 95 N.J. at 59 (Schreiber, J.,

dissenting)). To establish an implied easement, a plaintiff must prove all elements "by clear and convincing evidence." Id. at 26; see Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 533-34 (1995) (explaining that at the summary judgment stage, courts are "guided by the same evidentiary standard of proof . . . that would apply at the trial on the merits").

The trial court's holding that granted plaintiffs an implied easement rested on several inferences that favored plaintiffs and are not supported by undisputed material evidence. In that regard, the trial court relied on the restrictive covenants in the deeds to oceanfront property in Normandy Beach, which required the property owners to build more expensive homes. From those restrictions, the trial court inferred that oceanfront property owners must have gotten something more and that something included direct access to the ocean. That conclusion rests on two inferences that are not clearly established in the summary judgment record. Nothing in the law requires courts to find that a deed restriction implies that the property owner is receiving a compensatory benefit beyond what they are paying for the property. Moreover, even if beachfront property owners in Normandy Beach were assumed to have received something more, that something was not necessarily a perpetual easement to cross over NBA's property.

A-2551-22

The trial court also relied on photographs from the 1920s and reasoned that because there were no impediments between the beachfront property and the beach, the beachfront property owners would have assumed that they had direct access to the beach. In addition, the court referenced common sense and concluded that Berger, who originally purchased the property from C&I Co. in 1929, would have assumed that he had direct access to the beach. Here again, those inferences and conclusions are based on assumptions that are not established by undisputed evidence in the record.

In granting partial summary judgment to plaintiffs, the trial court also ignored evidence presented by NBA that might, when viewed in the light most favorable to NBA, support its position that plaintiffs do not have an easement. NBA points out that there is no document that gives plaintiffs an express easement to cross over NBA's property. The lack of an express easement undercuts the contention for an implied easement because if the direct-access right was so important, it should have been expressed. NBA also points out that plaintiffs' property is less than fifty feet from the nearest beach access point. It argues that short distance undercuts plaintiffs' assertion that a property owner would expect to be able to walk directly across the dunes because it is relatively

14

easy to walk to a beach access point enjoyed by all members of the Normandy Beach community.

In short, the trial court made a series of assumptions that were really findings of facts because those assumptions were based on information and evidence that could be viewed in a different way. The trial court also ignored other evidence that could be viewed to favor defendants' position and therefore did not give every favorable inference to defendants. So, the easement issue should not have been summarily decided. Instead, the question of whether plaintiffs have an easement, express or implied, requires a trial on those issues. Therefore, we reverse the order that granted plaintiffs an implied easement and remand the issue of whether plaintiffs have an easement, implied or otherwise, for determination at trial.

## III.

Next, we address plaintiffs' cross-appeal. In their cross-appeal, plaintiffs challenge two orders: (1) the order denying their motion for leave to amend their complaint to add claims for malicious prosecution and liable per se against Kirby; and (2) the order precluding them from presenting evidence on their claims for attorneys' fees and punitive damages.

We review a trial court's decision to grant or deny a motion to amend the complaint for abuse of discretion. Port Liberte II Condo. Ass'n v. New Liberty Residential Urb. Renewal Co., 435 N.J. Super. 51, 62 (App. Div. 2014). "A court abuses its discretion when its 'decision is made without a rational explanation, inexplicitly depart[s] from established policies, or rest[s] on an impermissible basis.'" State v. Chavies, 247 N.J. 245, 257 (2021) (quoting State v. R.Y., 242 N.J. 48, 65 (2020)) (internal quotation marks omitted).

Rule 4:9-1 governs when pleadings may be amended. When a motion is required, it should generally be granted unless granting the amendment would be futile. See Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 500-01 (2006) (citing R. 4:9-1); Grillo v. State, 469 N.J. Super. 267, 275 (App. Div. 2021).

A.    The Claim for Malicious Prosecution.

To prove malicious prosecution, a plaintiff must show: (1) the defendant instituted a criminal action against the plaintiff; (2) the defendant acted with malice; (3) there was an absence of probable cause for the criminal action; and (4) the criminal action ended in plaintiff's favor. Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 393-94 (2009). The cause of action reflects the principle that "one who recklessly institutes criminal proceedings without any reasonable basis should be [held] responsible for such irresponsible action." Epperson v.

<u>Wal-Mart Stores, Inc.</u>, 373 N.J. Super. 522, 534 (App. Div. 2004) (alterations in original) (quoting <u>Lind v. Schmid</u>, 67 N.J. 225, 262 (1975)). Claims for malicious prosecution, however, are "not a favored cause of action because citizens should not be inhibited in instituting prosecution of those reasonably suspected of crime," or in seeking redress in the courts. <u>Lind</u>, 67 N.J. at 262.

It is undisputed that no criminal complaint was issued against John Westerhold. Although Kirby made an application for a complaint to be issued, the municipal court determined that there was no probable cause to issue the complaint, and it was never served on John Westerhold. Given those facts, we conclude that plaintiffs could not establish a claim of malicious prosecution against Kirby.

It is generally recognized that criminal actions are not instituted unless and until the warrant or summons is issued. Accordingly, the <u>Restatement (Second) of Torts</u> explains:

> [F]ormal action must be taken by an official or a tribunal before there can be that institution of criminal proceedings which the plaintiff must prove in order to make his accuser liable under the rule stated under § 653 [the cause of action for malicious prosecution]. The mere fact that a person has submitted to a magistrate an affidavit for the purpose of securing a warrant for another's arrest or a summons for him to appear at a hearing, does not justify a finding that he has initiated criminal proceedings against the other.

17

> The proceedings are not instituted unless and until the warrant or summons is issued.
>
> [Restatement (Second) of Torts § 654 cmt. d (Am. L. Inst. 1965).]

While there are some cases in New Jersey that suggest that applying for a criminal complaint will satisfy the first element of malicious prosecution, those cases are distinguishable from this case. Plaintiffs rely on Shoemaker v. Shoemaker, 11 N.J. Super. 471 (App. Div. 1951), where an action for malicious prosecution was sustained after the named defendant swore to a complaint that charged plaintiff with threatening and abusing defendants' child. Notably, in Shoemaker, a warrant was issued, and the plaintiff was arrested and jailed for four days before the complaint was dismissed for insufficient evidence. Id. at 474. Here, Kirby reported the alleged mischief and trespass to the police. No criminal complaint, summons, or warrant was issued.

Moreover, the record would not support a clear finding that Kirby did not have some cause for making his report or that he acted with malice. See id. at 476 ("The substantial question argued is whether the defendant at the time he initiated the criminal proceeding honestly believed in plaintiff's guilt upon facts which were such that reasonable [persons] could regard them as proof that plaintiff was guilty of the charge."). In short, we discern no abuse of discretion

18

because the central dispute over an easement should not be allowed to spiral into a claim of malicious prosecution.

B.     The Liable Per Se Claim.

To assert a claim for liable, a plaintiff must demonstrate three elements: (1) the defendant "made a false and defamatory statement concerning [the plaintiff];" (2) "the statement was communicated to another person (and [was] not privileged);" and (3) the defendant "acted negligently or with actual malice." G.D. v. Kenny, 205 N.J. 275, 292-93 (2011); accord Neuwirth v. State, 476 N.J. Super. 377, 390-91 (App. Div. 2023).  "A defamatory statement, generally, is one that subjects an individual to contempt or ridicule, one that harms a person's reputation by lowering the community's estimation of [that person] or by deterring others from wanting to associate or deal with [that person]." Petro-Lubricant Testing Lab'ys, Inc. v. Adelman, 233 N.J. 236, 253 (2018) (quoting Durando v. Nutley Sun, 209 N.J. 235, 248-49 (2012)) (internal quotation marks omitted).

Some statements are so injurious that they are "defamatory as a matter of law." Romaine v. Kallinger, 109 N.J. 282, 291 (1988).  Those statements include "falsely attributing criminality to an individual." G.D., 205 N.J. at 293.

Plaintiffs' allegations concerning liable per se were based on Kirby's application for a criminal complaint. The criminal complaint was never issued and, therefore, there was no publication of the alleged liable statements. To the extent that plaintiffs argue that there was publication to the police and the judge who reviewed the application, Kirby had a qualified privilege to report the information to them. Dairy Stores, Inc. v. Sentinel Publ'g. Co., 104 N.J. 125, 137 (1986) (explaining that "citizens have a qualified privilege to make statements to authorities for the prevention and detection of crime").

C.    Plaintiffs' Claims for Attorneys' Fees and Punitive Damages.

We review decisions regarding attorneys' fees and punitive damages for abuse of discretion. See McGowan v. O'Rourke, 391 N.J. Super. 502, 508 (App. Div. 2007) (attorneys' fees); Maudsley v. State, 357 N.J. Super. 560, 590 (App. Div. 2003) (punitive damages).

"A prevailing party can recover counsel fees if expressly allowed by statute, court rule, or contract." Empower Our Neighborhoods v. Guadagno, 453 N.J. Super. 565, 579 (App. Div. 2018). Initially, we note that given our reversal of the partial summary judgment award to plaintiffs, at this point plaintiffs are not prevailing parties. More to the point, plaintiffs have identified no statute, court rule, or contract entitling them to an award of attorneys' fees. Instead, they

rely on Red Devil Tools v. Tip Top Brush Co., 50 N.J. 563 (1967). The facts in Red Devil that gave rise to an award of attorneys' fees do not exist in this case and Red Devil does not support plaintiffs' claim for attorneys' fees. Accordingly, we discern no abuse of discretion in the trial court's decision to preclude plaintiffs from presenting evidence of their claim for attorneys' fees.

To establish a claim for punitive damages, a plaintiff must prove, "by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. 2A:15-5.12(a).

"Actual malice" means "an intentional wrongdoing in the sense of an evil-minded act." In re Gloria T. Mann Revocable Tr., 468 N.J. Super. 160, 178 (App. Div. 2021) (quoting N.J.S.A. 2A:15-5.10) (internal quotation marks omitted). "Wanton and willful disregard" is defined as "a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." N.J.S.A. 2A:15-5.10. To support a claim for punitive damages, plaintiffs must identify conduct that is "exceptional or outrageous" and "especially egregious." Saffos v. Avaya Inc., 419 N.J. Super. 244, 263 (App. Div. 2011) (first quoting Maiorino

v. Schering-Plough Corp., 302 N.J. Super. 323, 353 (App. Div. 1997); and then quoting Rendine v. Pantzer, 141 N.J. 292, 314 (1995)) (internal quotation marks omitted).

As the trial court correctly recognized, this entire action relates to a dispute over a property right; that is, an easement. Following discovery, plaintiffs presented no evidence that NBA or NBIA acted with malice or engaged in actions that were exceptionally outrageous or especially egregious. Instead, the record demonstrates that NBA and NBIA simply took a position with which plaintiffs disagree. That dispute does not warrant punitive damages.

IV.

In summary, on defendants' appeal, we reverse the order granting partial summary judgment to plaintiffs and finding an implied easement. On plaintiffs' cross-appeal, we affirm both orders challenged by plaintiffs. We, therefore, remand the remaining issues of whether plaintiffs have an easement for a trial on those issues.

Reversed and vacated in part, affirmed in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2551-22